THE HOWE MACHINE CO. v. BRYSON ET AL.

1. **Damages:** MEASURE OF: BREACH OF CONTRACT. Where one party to an executory contract fails to perform according to its terms, the other may recover damages for the breach.

2. ———: ———: ———. Remote and contingent damages, based upon profits purely speculative in character, are not recoverable for nonfeasance.

3. ———: ———: ———. A party made a contract with the general agents of a sewing machine company, by the terms of which he was to rent a room, provide himself with a team and furnish other necessary means for the sale of machines and devote his time thereto, the agents agreeing to furnish him with all the machines he could sell at a price twenty-five per centum below the retail rate. The party performed his undertaking, but the machines were not supplied as agreed: *Held*, that the measure of damages was the value of the time lost as the result of the breach, without reference to the profits which might have been realized if the contract had been performed. BECK and DAY, JJ., *dissenting*.

*Appeal from Mitchell District Court.*

THURSDAY, OCTOBER 5.

ACTION upon an account and promissory note executed by C. H. Bryson, and on a bond, whereby the other defendants became bound to answer for the debt of their co-defendant.

The account is for sewing machines delivered to defendant, C. H. Bryson, as agent for their sale, under a written agreement between her and J. A. Stebbins & Co., and the note is executed to the same firm. Both instruments are assigned to plaintiff.

The answer of defendants sets up that A. M. and C. H. Bryson are husband and wife, and that subsequently to the execution of the bond sued on, and the agreement between the wife, C. H. Bryson and Stebbins & Co., she and her husband entered into a verbal contract with Stebbins & Co., to the effect that both of the defendants were to devote their entire time to the sale of sewing machines to be furnished them by the other party, were to rent a room, employ a team and other necessary means for the prosecution of the business, and that they were to be supplied with all the machines they could sell at a price twenty-five per centum below the retail rate. The defendants performed all their undertakings, but the other parties refused to perform their contract, and failed to supply defendants with machines which they were prepared to sell and could have sold, and they aver that their damages therefrom were $1,750, which they claim should be a set-off against the demand sued on by plaintiff. There was a verdict and judgment for defendants. Plaintiff appeals.

*L. M. Ryce*, for appellant.

*W. V. Allen*, for appellees.

ADAMS, J.—The defendants introduced evidence tending to establish the breach of the contract by Stebbins & Co., as set up in the answer; that they had failed to supply a large number of machines which defendants could have sold, and proof was also introduced tending to show that defendants for about eight months had devoted their whole time to the business, canvassing the county for the sale of machines and introducing them to the attention and favor of the people; that they had rented a room, purchased a team and made other preparations for the prosecution of the business; that during the whole time they were making almost constant applica-

The Howe Machine Co. v. Bryson.

tions for machines, and a number were supplied them, but insufficient to meet the demand of the market, and that Stebbins & Co. made promises and held out inducements for them to believe that a sufficient number would be sent them to supply the demand created by their efforts to recommend them to the public.

Upon this evidence the court gave the jury the following instructions:

"The verbal contract alleged in the defendants' counterclaim is a contract of employment, and if you find from the evidence that it has been sufficiently proved and that J. A. Stebbins & Co. broke the contract on their part, and that the defendants were necessarily idle, because of such breach and suffered injury thereby, then for such breach you should allow defendants such damages as would make them whole for such breach, and in considering the value of the time which defendants were necessarily idle, you must take into consideration in this case the fitness of defendants for the services contracted for, the preparations and appliances which they had and had made to sell the machines, the market demand for such machines in this county; and, from all the evidence and circumstances as shown in evidence, you will determine the value of the time lost by defendants by reason of the breach of the contract by Stebbins & Co.

"As the contract alleged is one for the entire services of defendants, including the team, and as there is no agreement alleged that Stebbins & Co. were to pay for the keeping of the team or rent of room or for advertising, you cannot allow the defendants therefor.

"Under the contract as alleged, the defendants would be bound to furnish the team, their keeping, and to pay for the room rent and for advertising, and their compensation for all these things was covered by the discount price which defendants were to have from the retail price of the machines sold."

The giving of the foregoing instructions is assigned as error.

It was held by the District Court that the defendants are entitled to recover the value of the time during which they

were necessarily idle. In directing the jury, however, as to how they should arrive at the value of such time we think the court erred.

On this point the court said: " In considering the value of the time which defendants were necessarily idle you must take into consideration the fitness of the defendants for the services contracted for, the preparations and appliances which they had made to sell the machines, and the market demand for such machines in this county."

It is evident from the foregoing that the court considered that the value of defendants' time was to be estimated with reference to the profits which they might have made under the contract if it had not been broken. The court does not, to be sure, expressly say that the value of the time which defendants lost would be the profits which they might have made, but if the market demand for the machines was to be considered in arriving at the value of the time, such demand was to affect its estimate; to what extent the court does not say. We are of the opinion that the defendants' damages were either the loss of profits which they might have made or the value of the time during which they were idle, estimated without reference to the profits, with their reasonable expenditures added. We know of no way of estimating loss of time with reference to the profits which might have been made without making the loss of profits the real ground of the damages. If a book-keeper is induced to discontinue his ordinary business by reason of being employed to sell goods upon commission, and the goods are not furnished and he loses time while holding himself in readiness, his damages are either the reasonable value of such a book-keeper's time, or the net profits which might have been made if the contract had not been broken. They are certainly far from identical and we know of no middle ground between the two. The fact that the value of defendants' time might not be susceptible of as definite estimation as that of a book-keeper, or other person engaged in some well defined industry in general demand, can make no difference.

The real question in this case, then, is: Are the defendants

entitled to recover for loss of time, or loss of profits? We are of the opinion that they are entitled to recover for loss of time. To this should be added, to be sure, their reasonable expenditures.

We would not be understood as holding that where a person is employed to sell goods on commission and the employer fails to furnish the goods, the person employed may not recover for loss of profits which he might have made if the goods had been furnished. If the quantity to be furnished was a definite amount and the demand was practically unlimited, possibly he might be allowed to recover for loss of profits.

But where a person employs another to sell on commission all the goods he can within a limited territory, especially if the goods are of that kind of which there is no regular consumption or demand, the case is quite different; and such is the present case.

The number of sewing machines of a particular kind which can be sold within a given county and within a given time, is very uncertain. Few cases can be found where profits have been disallowed as speculative in which the uncertainty is greater.

*Griffin v. Colver*, 16 N. Y., 490, is regarded as a somewhat leading case. The plaintiff agreed with defendant to furnish a steam engine to drive certain machinery used for planing lumber, and failed to do so within the time agreed. Suit being brought by him to recover for the engine, the defendant claimed damages for loss sustained by him by reason of his machinery being idle between the time the engine should have been furnished and the time it was furnished. He claimed that he was entitled to recover the amount of the net profits which would have been made if the engine had been furnished, as agreed. It was held, however, that such was not the proper measure of damages, but that he might recover a reasonable compensation for the investment in the machinery during the time the same was idle. The general doctrine is succinctly stated by SELDEN, J., as follows: "It is a well established rule of the common law, that the damages to

be recovered for a breach of contract must be shown with cer-
tainty, and not left to speculation or conjecture; and it is
under this rule that profits are excluded from the estimate of
damages in such cases, and not because there is anything in
their nature which should, *per se*, prevent their allowance.
Profits which would certainly have been realized but for
the defendant's default are recoverable; those which are spec-
ulative or contingent are not." Yet the difficulty of determ-
ining what would have been the net profits of the planing
mill was small compared with the difficulty of determining
what profits the defendants in the present case would have
made upon all the machines which they could have sold in
the county of Mitchell, within the time in question.

If the demand for planed lumber had been limited to a ter-
ritory, and such demand was less than the capacity of the
mill, that case would have been somewhat like the present
one.

In *Blanchard v. Ely*, 21 Wend., 342, plaintiff brought suit
to recover for building a steamboat. The defendant showed
that a part of the machinery was defective, and that by reason
thereof he failed to make several trips with the boat which he
would have made, and claimed to recover for loss of profits on
those trips. It was held that such profits were too uncertain,
and were accordingly disallowed. Yet, if we suppose that
the boat could have been employed to its full capacity, the
profits were not uncertain in any such sense as in the present
case. An attempt is made by defendants to show how many
sewing machines they could have sold, by showing how many
they did sell during the time they were supplied with them.

But this basis of calculation is very unreliable. In a limi-
ted territory the more vigorous the canvass has been, the more
nearly it is exhausted. The number of machines sold, if large,
might be in inverse ratio to the number of those which could
thereafter be sold. Yet no other basis of calculation is offered,
and we know of none which is not equally unsatisfactory. It
is certain that an inventory of the people in a county, who
will buy a sewing machine of a particular kind, within a given
time, cannot be taken.

In *Masterton v. The Mayor, etc., of Brooklyn*, 7 Hill, 61, damages were allowed for loss of profits, but the decision was put expressly upon the ground that the profits did not depend upon the fluctuations of the market, or the chances of business.

The appellees rely upon *Richmond v. The Dubuque & Sioux City R. R. Co.*, 33 Iowa, 422. In that case the plaintiff sought to recover for storage on grain. He had erected an elevator at great expense for the purpose of storing grain for the defendant.

Afterwards the defendant made a different arrangement, whereby the grain shipped upon the road did not pass through the elevator. The evidence which was offered to show what the storage would have amounted to is not set out in the opinion, but the majority of the court thought that it was sufficient to show approximately what the storage would have been. If so, the plaintiffs were of course entitled to recover the amount of the net profits which would have been made.

We cannot regard that case as decisive of the present one, nor has any case been cited which to our mind holds the doctrine for which the appellees contend.

We are of the opinion, therefore, that while the district court was correct in instructing the jury, that the defendants might recover for the value of the time which they lost, the court erred by instructing in the same connection, that the jury might take into consideration the market demand for the machines in the county. The value of the time which the defendants lost should have been estimated generally, and without reference to the profits which might have been made under the contract.

REVERSED.

BECK, J., *dissenting.*—I dissent from the conclusion reached by my brothers in the foregoing opinion, and will proceed, as briefly as I can, to give the grounds of my objection thereto.

I am of the opinion that the instructions given by the court to the jury fairly present the rules of law applicable to the case. The contract in question is clearly one of employment of the defendants. They were to devote their whole time to

the service of Stebbins & Co., in the sale of the machines. The compensation was to depend upon their activity and capacity for the business, and the demand for the articles to be sold, conditions which, under favorable circumstances, would result to their advantage, and under any circumstances would be favorable to the interest of the other contracting party. This compensation could not be determined by the value of the labor of a man and woman, when hired for like employment upon a stipulated or customary salary. In such a case, the employe takes no risk as to the demand of the market or as to other circumstances which would affect sales, but in this case such risks were assumed by defendants. It is very plain that they ought to be compensated in the manner provided by the contract, which was dependent upon the machines to be sold. But, as Stebbins & Co. failed to supply them with machines to meet the existing demand, it became necessary for the jury to determine, under the evidence, the number required by such demand. The fact that this cannot be determined with entire certainty, that, to a great extent, the question depends upon collateral facts and the opinion of the witnesses, cannot defeat defendants in their claim for just compensation on account of the loss they sustain by the default of the other party. Defendants are, in justice, entitled to receive, as compensation, twenty-five per centum of the proceeds of all sales that would have been made by them had plaintiffs performed their contract. If defendants cannot be permitted to establish by competent proof, facts from which the jury can reasonably infer the number of such sales, the law would fail to render them just and full compensation for the loss sustained by the breach of the contract. See *Richmond v. Dubuque & S. C. R. Co.*, 26 Iowa, 191; s. c., 33 Iowa, 422; s. c., 40 Iowa, 264; *Gilbert v. Kennedy*, 22 Mich., 117; *Cunningham v. Dorsey*, 6 Cal., 19.

In *Richmond v. Dubuque & S. C. R. Co.*, the plaintiff was permitted to recover the profits he would have realized upon handling and storing grain, which would have been received at his elevator, had defendant performed its contract. These profits were the difference between the cost of storing

and handling and the price as fixed in the contract sued upon. The contract was to run through a long series of years. The number of bushels which plaintiff would have stored and handled, was determined by evidence which related to the demands of trade, the productions of the country, etc., etc. The impossibility of arriving at an accurate estimate of the business that would have been done was not considered an impediment to plaintiff's recovery; an approximation was considered sufficient.

In the case at bar defendants' damages are established by considering like facts, which can be proved with equal certainty. Other cases, of like import with those cited, can be mentioned, but additional authorities are not deemed necessary to support the conclusion I have reached upon this branch of the case.

Should it be thought that defendants' compensation partakes of the nature of the profits of the business in which, under their contract, they were engaged, this does not preclude them from recovering the amount they would have realized had plaintiff supplied them with the machines contemplated by the contract. Profits which are the certain gains that would have resulted from the performance of the contract are recoverable as damages. *Philadelphia, Wilmington, etc. R. Co. v. Howard*, 13 Howard, 307; *Hoy v. Grumble*, 34 Pa. St., 9; *Cunningham v. Dorsey*, 6 Cal., 19.

The opinion of my brothers disregards an elementary rule for determining damages recoverable upon contracts. It is this: " The contract itself furnishes the measure of damages." Sedgwick's Measure of Damages, 200.

Here is a contract for the services of defendants during a time fixed therein. Defendants were to devote their time, with the use of a team and room, to the employment specified in the contract. The opinion of my brothers holds that they are to be compensated for their time, " the loss of time," and for the use of the team. They can recover only upon the contract, for their services were to be given under the contract, and plaintiff was bound in no other manner than by this contract. The contract must furnish the measure of damages to

which defendants are entitled on account of plaintiff's breach thereof. They are entitled to the sum which they would have earned, for so the contract provides, and the agreement furnishes the data upon which the estimate of their earnings may be made. We have seen, that because an element of profits may enter into the damages, they are not for that reason to be denied. Nor is it a sufficient ground for refusing such compensation, to show that the determination of the exact amount of such damages is impossible. "But justice is, after all, but an approximate science, and its ends are not to be defeated by a failure of strict and mathematical proof." Sedgwick on Measure of Damages, p. 635 (marg. p. 593).

Mr. Justice STORY, in an insurance case, uses the following language, which is quoted by the author just named: "Absolute certainty in cases of this sort is unattainable. All we can arrive at is an approximation thereto; and yet no man ever doubted that such a loss must be paid for, if it is covered by the policy." *Rogers v. Mechanics' Ins. Co.*, 1 Story, 300.

The damages which, under instructions given by the court, the defendants were entitled to recover are no more uncertain than those recovered in *Richmond v. The Dubuque & Sioux City Railway Co.*, *supra*. Like the damages in that case, they are determined by the contract between the parties, and the cases resemble also in the fact that elements of profit enter largely into the damages, and in the further fact that recovery in each case was sought for services and expenses rendered and incurred by the respective parties. Surely, if it was admissible to show, in the case just named, how many bushels of grain plaintiff would handle, for which he was to receive one or two cents a bushel, and from which was to be deducted the expenses of running his machinery and the like, for a long series of years, thus ascertaining the profits he was entitled to recover, which depended largely upon the course of trade, was controlled by prices, and was materially affected by the character of the seasons, the progress of improvements in the country, etc., in this case it cannot be regarded that the evidence establishing the number of machines defendants would have sold is too uncertain to authorize the recovery of dam-

ages based thereon. In *Richmond v. The Dubuque & Sioux City R'y Co.* damages were estimated upon the number of bushels of wheat which would have been handled by plaintiff; in this case, defendants claim to recover for the number of machines they would have sold. I am unable to distinguish between the cases in this respect.

In my opinion, the cases cited in the opinion of the majority of the court are not applicable to the point they are cited to support. In *Griffin v. Colver*, 16 N. Y., 490, the contract upon which recovery of damages was sought on account of its breach was the delivery of a steam engine. It was held that the net profits of the use of the machinery for the time it was idle on account of the non-delivery of the engine did not constitute plaintiff's damage. The contract in that case did not contemplate the use of the engine, but simply provided for its delivery. The damages based upon profits, which the court allowed in that case and the one next named, were the loss sustained by the respective plaintiffs, upon dependent or collateral contracts entered into upon the expectation of the performance of the contracts in suit. They were not the direct consequences flowing from the contracts. If it had bound the contracting party to furnish the engine for use during a specified time, to supply motive power for the machinery, it would be like the case before us, but it simply involves the sale of property and failure to deliver it.

*Blanchard v. Ely*, 21 Wend., 342, is a case like the other one just named. It involved a contract for *building* a steamboat. Had the contract provided for furnishing a steamboat for use for a certain time, it would, in that case, have been of the character of the contract in the case before us, and the defaulting party would have been liable for the loss of profits resulting from the violation of his obligation. In the cases supposed, as the one in hand, the contracts themselves would point to the profits as the damages sustained in their violation.

Defendants in this case were, under the contract, to render certain services for plaintiff, which failed to give them employment; the compensation provided for in the contract is the measure of damages. That this compensation may be approx-

imately shown, and the law requires nothing more, I think, cannot be doubted.

The twenty-five per centum upon the prices of the machines sold or to be sold by defendants, cannot be regarded as profits. It was simply the manner of fixing in the contract, defendants' compensation, and no idea of profits enters into it. But should profits enter into, and become a part of defendants' compensation, which would be increased by certain contingencies, they must nevertheless be considered in ascertaining the damages recoverable for a violation of the contract. If defendants' compensation depended wholly upon profits of the business, they could recover under the contract whatever profits they would have earned. *Masterton v. The City of Brooklyn*, 7 Hill, 61, cited in the majority opinion supports this position. In that case the plaintiff had contracted with defendant, to deliver a large quantity of marble which would require the labor of five years. After the delivery of a part of the marble, (payment being made therefor), defendant refused to receive any more, and thereupon plaintiff brought suit on the contract, and recovered $72,999 damages. The court used the following language in its opinion: " When the books and cases speak of the profits anticipated from a good bargain, as matters too remote and uncertain to be taken into account in ascertaining the measure of damages, they usually have relation to *dependent and collateral engagements*, entered into on the faith and in expectation of the performance of the principal contract.

&ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;

But profits or advantages which are the direct and immediate fruits of the contract entered into between the parties, stand upon a different footing. These are part and parcel of the contract itself, entering into and constituting a portion of its very element; something stipulated for, the right to the enjoyment of which is just as clear and plain as the fulfillment of any other stipulation. They are presumed to have been taken into consideration, and deliberated upon before the contract was made, and formed perhaps the only inducement to the arrangement."

I think I have shown that the contract provides for the

compensation, which the instructions given by the court authorized the jury to find as defendants' damages. These damages are provided for by the contract itself. That they may be proved to that degree of approximation required by the law, I cannot doubt. In this respect, the case is susceptible of a nearer approximation to the exact amount of damages sustained, than could have been attained in *Richmond v. The Dubuque & Sioux City R'y Co.*

The limitation of defendants' damages to the value of their services during the time they were employed, as is done in the majority opinion, deprives them of the real benefits of the contract, and fixes their compensation at an amount not provided for therein. This the law will not do.

The decision in this case, in my judgment, misapplies the rules of the law, works injustice to defendants, and will prove mischievous as a precedent.

DAY, J.—I concur in the conclusions of the dissenting opinion of my brother BECK. The measure of damages should depend upon and bear a relation to the contract, for the breach of which damage is claimed. A party who has a contract for service by the month, either with or without stipulation as to price, sustains a damage by the breach of the contract, which is susceptible of easy determination. If he has not neglected to avail himself of opportunities for employment, the measure of his damage is the sum agreed to be paid, or the reasonable value of his services for the time for which he was employed. A party who, like these defendants, has a contract under which he is to receive a certain per centum upon specific articles sold, may make much more or much less than the party who is employed by the month. If there is a breach of his contract, he may be damaged much more, or much less, than the other. If damaged less, he ought not to recover as much; if damaged more, he ought to be compensated for his loss. In case of a breach of contract these two persons ought not to be reduced to the same measure of recovery. The law ought not to construct a Procrustean bed, upon which both parties are compelled to lie, and which both, even by mutilation if necessary, are compelled to fit.