HICHHORN, MACK & COMPANY, Appellants, v. CHARLES H. BRADLEY.

**Contract to Give Best Services:** *Efforts to sell articles of another.* Where defendant, a jobber of cigars, in consideration of being given the sole agency for a certain cigar, agreed to render his best services in pushing their sale, by putting them in the hands of his agents, advertising them, etc., it was not a breach of his contract that at the time he was performing the same he also made efforts to introduce and sell another cigar of the same general character, manufactured by himself.

**Agency:** EVIDENCE: *Private instructions to general agent.* Where a general agent of a cigar manufacturer contracted with a jobber for the agency for the cigars within the scope of such agent's authority, in an action in which the jobber claimed breach of contract, parol evidence of private instructions given to the agent by the principal was inadmissible.

**Evidence:** CUSTOM AND USAGE: *Degree of proof.* It is not necessary, in order to prove a custom or usage, that the evidence should be "clear, uncontradictory, and distinct;" but if there is evidence of the existence of the usage, though conflicting, the question of its existence, is for the jury.

**SAME.** Where a jobber of cigars contracted to render his best services in pushing a certain brand manufactured by plaintiffs, and his agency therefor was thereafter revoked, in an action on a contract, evidence of custom as to the length of time during which a jobber would make particular efforts to introduce a brand of cigars was competent, since the contract did not necessarily require that as long as it was in force, defendant should make the same efforts to advertise the cigar that he was required to make in its first introduction.

**DAMAGES;** MEASURE; *Breach of contract; Profits;* A jobber of cigars was appointed the agent of manufacturers for the introduction of a particular brand of cigars in certain territory,

and before the termination of the contract his agency was illegally revoked. *Held*, that, there being no other measure of damages than the loss of profits, evidence of the amount of sales of such cigar made after the breach, and up to the time of the trial, was not objectionable on the ground that it authorized and afforded a basis for uncertain and speculative damages only.

*Appeal from Dubuque District Court.*—HON. M. C. MATTHEWS, Judge.

TUESDAY, MAY 20, 1902.

ACTION on account for cigars sold and delivered at an agreed price. Defendant did not contest the indebtedness, but interposed a counterclaim for damages for breach of a contract by which, as he alleged, plaintiffs had agreed to give him the exclusive right to sell a certain brand of cigars within certain territory. The jury returned a verdict for defendant on his counter claim, and from the judgment thereon plaintiffs appeal. *Affirmed.*

*Henderson, Hurd, Lenehan & Kiesel* for appellants.

*Matthews, Lindsay & Frantzen* and *N. E. Utt* for appellee.

McCLAIN, J.—It is alleged in defendant's counterclaim, and there is evidence tending to show, that in January, 1897, defendant made an oral contract with one Glaspell, acting as plaintiffs' agent, by which defendant acquired from plaintiffs the exclusive right to sell in certain territory in Iowa a brand of cigars known as the "Tom Moore," manufactured by plaintiffs. In this contract it was contemplated and understood that defendant was to incur expense in introducing the cigar to the trade within the territory given to him, and it was agreed that plaintiffs should furnish such cigars of this brand as defendant

should order as long as defendant continued to render the best service in his power in pushing the sale of said cigars. About July 1, 1898, plaintiffs refused to longer furnish cigars to defendant; and defendant was unable, therefore, to make further sales thereof to his customers, although he had, by introducing the cigar to the trade, at some expense, built up a demand for them.

I. Counsel for appellants assign errors on the rulings as to the admission and exclusion of evidence, and the giving and refusal of instructions with reference to the authority of Glaspell to make this contract. There was evidence tending to show that defendant was notified that Glaspell would visit him in Dubuque, with the view of making some arrangement with him for handling these cigars. There was some evidence of a custom in the trade by which it was generally understood that agents negotiating with jobbers for the introduction of brands of cigars had authority to give the exclusive privilege for an unlimited time. The court excluded testimony of a witness as to what was said by a member of plaintiff firm to Glaspell at Rockford, Ill., where the two had been negotiating for the release by another agent of territory which was to be given to defendant, as to the terms of the contract which Glaspell should make with defendant; but we think there was no error in this ruling, for, as against a contract made by a general agent within the scope of his authority, it is not competent to show private instructions given to the agent by the principal. It may well be that in some cases the authority given to the agent may be proven, although the person with whom the agent subsequently deals is not bound to know the extent of such authority. *Rosenberger v. Marsh*, 108 Iowa, 47, 50. But what the witness in the case before us was asked to testify to was not the authority of the agent, but a conversation between the

agent and the principal. Clearly, this was immaterial under the issues. Much is said by counsel for appellants as to the evidence introduced by defendant to show a usage of trade by which the contract was within the general scope of Glaspell's apparent authority. But we find no error in the giving of instructions on this subject, or the refusal of those asked. It seems not to be the rule in this state that to prove such usage the evidence must be "clear, uncontradictory, and distinct." If there is evidence of the alleged usage, the question as to whether it exists is one for the jury, and mere conflict in the evidence will not justify its exclusion. *Milroy v. Railway Co.*, 98 Iowa, 188. In the case of *Kaufman v. Manufacturing Co.*, 78 Iowa, 679, evidence of such a usage was received and considered for the purpose of showing the authority of the agent to make substantially such a contract as is sought to be established in this case. It is contended that the testimony as to the usage did not exactly conform to the allegations as to the contract which Glaspell is claimed to have made, but there was not such variance as to render the testimony inadmissible.

II.   One of the defenses set up by plaintiffs to defendant's counterclaim was that defendant had failed to carry out his part of the agreement, as to rendering his best services in pushing the sale of the brand of cigars in question, by putting into the hands of his agents, and urging them to promote the sale of, another brand of cigars, manufactured by himself; but it is to be said that while the "Tom Moore" was described as a seed and Havana tobacco 10-cent cigar, and the cigar which defendant manufactured and put into his agents' hands was also a cigar of the same general description, it was not offered to the trade as identical with the Tom Moore. Defendant did not agree to sell

no other 10-cent cigar than the Tom Moore, nor did he agree that he would not sell any other cigar made of seed and Havana tobacco. If he made the proper efforts to introduce and push the sale of the Tom Moore cigar, he was at liberty, so far as we can see, to also introduce and push the sale of as many other brands of cigars as he saw fit. If this was not what plaintiffs expected, the evidence shows that they had failed to embody their understanding in the contract. While there is some evidence that defendant attempted to have his agents push his own cigar to the exclusion of the brand which he undertook to sell for plaintiffs, there was certainly a conflict of evidence on this question, and at least some testimony to show that the instructions to his agents to push his own cigar to the detriment of the Tom Moore were not given until after plaintiffs had refused to furnish further cigars of the latter brand. It is not claimed that there was error in the instructions given by the court on this subject, and, in view of the conflict in the evidence, it was not the duty of the court to instruct, as defendant asked, that plaintiffs had no right to recover, nor to grant a new trial on the ground that, under the instructions given, the verdict should have been for the plaintiffs.

III. Some objection is urged to rulings of the court allowing evidence to be introduced as to the usage of the trade in regard to the length of time during which a jobber should make particular efforts to introduce a brand of cigars. But one of the stipulations in defendant's contract was that defendant was to render his best services in pushing the brand of cigars in question, and it was material and proper for him to show what that implied. Certainly it did not necessarily imply that he should continue, as long as the contract was in force, to make the same efforts to bring the cigar to the attention of the trade that he

was required to make in its first introduction. We find no error in the rulings complained of on this question.

IV. The chief contention, however, of counsel for appellants, is that the damages which defendant attempted to show were too remote and speculative to be considered. Evidence was admitted, over plaintiffs' objection, showing the number of Tom Moore cigars sold by defendant in his territory up to the time when plaintiffs refused to furnish him any more cigars under the contract, and the number of the same kind of cigars sold in the same territory by the jobber to whom the territory was given by plaintiffs after the contract with defendant was revoked. It may be of assistance in considering this evidence to say here that defendant, by his pleadings, limited his right to recover to the damages accrued up to the time of trial, and also that the sales in this territory subsequent to the revocation of defendant's contract were proven by the testimony of a witness who had been a traveling salesman for defendant in the sale of the cigars under the contract, and who, after its revocation, became salesman for the jobber who acquired from plaintiffs the right to sell the cigar in the same territory. The court instructed that, if the jurors found defendant to be entitled to recover damages under his counterclaim, then, in arriving at the amount of damage, they should consider the evidence above referred to, in connection with all evidence relating to the price at which the cigars were to have been furnished to defendant under the contract, and the price at which they were to be resold, and of evidence as to what it would cost defendant to have handled and sold said cigars in said territory, and, from all the evidence relating to these matters, determine how much, if anything, said defendant had been damaged by the breach of the contract. The jurors were also told that, in ascertaining the amount

of damage, they should determine as nearly as possible the quantity of cigars defendant would have sold in said territory up to that time, and the profits which would have accrued from such sale, and that, in determining the quantity of cigars which defendant would have sold, they might consider the number sold prior to the breach of the contract, the state and condition of the trade, the number of towns in the territory, and the demands of the trade in said territory for the Tom Moore brand of cigars. And the court refused to direct the jurors, as requested by plaintiffs, that they should not take into account or include in their verdict any sums for profits upon cigars which defendant might have sold, if ' his right to sell the same had not been taken from him, or any other future speculative profits. There is, perhaps, no more perplexing question in the law than that relating to the measure of damages for breach of contract involving contemplated profits to be derived from the performance of the contract. Here we are not concerned with the question which sometimes arises, whether profits are within the contemplation of the parties, according to the rule of *Hadley v. Baxendale*, 9 Exch. 341, which has been frequently cited, and has been approved by this court in *Mihills Manufacturing Co. v. Day*, 50 Iowa, 250, and other cases. It is perfectly clear in this case that the profits to be derived from the sale of these cigars constituted the only consideration to the defendant for entering into the contract, and that the loss of such profits was in the contemplation of the parties at the time the contract was made as a direct consequence which would result from its breach. And it is well settled that when the loss of future profits is thus in the contemplation of the parties, and does directly result from the breach of the contract, the amount of profits thus lost may be recovered. In *Trigg v. Clay*, 88 Va. 330, 335 (13 S. E.

Rep. 434, 435, 29. Am. St. Rep. 723), this pertinent langugae is used, which we think is a correct exposition of the law: "It has often been held that profits which are the direct and immediate fruits of the contract are recoverable. There are many cases in which the profit to be made by the bargain is the only thing purchased, and in such cases the amount of such profit is strictly the measure of damages. Wood's Mayne, Damages p. 82. It has been held that, when the defendant refused to allow the contracts to be executed, the jury should allow the plaintiffs as much as the contract would have benefited them. Profits or advantages which are the direct and immediate fruits of the contract entered into between the parties are part and parcel of the contract itself, entering into and constituting a portion of its very elements,—something stipulated for, and the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed, perhaps, the only inducement to the arrangement." "Profits are not excluded from recovery because they are profits, but, when excluded, it is on the ground that there are no criteria by which to estimate the amount with the certainty on which the adjudications of courts and the findings of juries should be based." *Brigham v. Carlisle*, 78 Ala. 243 (56 Am. Rep. 28). And in this case the court quotes with approval the following language found in 3 Sutherland, Damages, 157: "When it is advisedly said that profits are uncertain and speculative, and cannot be recovered when there is an alleged loss of them, it is not meant that profits are not recoverable merely because they are such, nor because they are necessarily speculative, contingent, and too uncertain to be proved, but they are rejected when they are so, and it is probable that the inquiry for them

has been generally proposed when it must end in fruit-
less uncertainty; and therefore it is more a general
truth than a general principle that a loss of profits is
no ground on which damages can be given." The dis-
tinction between an erroneous rule of law, sometimes
assumed, that prospective profits are not to be con-
sidered in measuring damages for breach of contract,
and the correct proposition, that remote and speculative
profits cannot be shown, for the reason that no sufficient
evidence thereof is attainable, is thus stated in *U. S. v.
Behan*, 110 U. S. 338, 344 (4 Sup. Ct. Rep. 81, 83, 28
L. Ed. 168): "The *prima facie* measure of damages for
the breach of a contract is the amount of the loss which
the injured party has sustained thereby. If the breach
consists in preventing the performance of the contract,
without the fault of the other party, who is willing to
perform it, the loss of the latter will consist of two dis-
tinct items or grounds of damage, namely: First, what
he has already expended towards performance, less the
value of materials on hand; secondly, the profits that
he would realize by performing the whole contract.
The second item—profits—cannot always be recovered.
They may be too remote and speculative in their
character, and therefore incapable of that clear and
direct proof which the law requires. But when, in the
language of Chief Justice Nelson in the case of *Master-
ton v. Mayor*, etc., 7 Hill, 69 (42 Am. Dec. 38), they are
the 'direct and immediate fruits of the contract' they
are free from this objection. They are then 'part and
parcel of the contract itself, entering into and constitut-
ing a portion of its very elements,—something stipulated
for, the right to the enjoyment of which is just as clear
and plain as to the fulfillment of any other stipula-
tion.' Still, in order to furnish a ground of recovery
in damages, they must be proved. If not proved, or if
they are of such a remote and speculative character that

they cannot be legally proved, the party is confined to his loss of actual outlay and expense." And see *Howard v. Manufacturing Co.*, 139 U. S. 199 (11 Supt. Ct. Rep. 500, 35 L Ed 147); *Anvil Mining Co. v. Humble*, 153 U. S. 540 (14 Sup. Ct. Rep. 876, 38 L. Ed. 814). That the profit or advantage which a party expected to derive from the performance of the contract may be so speculative and uncertain as not to be capable of proof as the basis for the recovery of damages, is well settled. *Bank v. Thurman*, 69 Iowa, 693; *Bernstein v. Meech*, 130 N. Y. 354 (29 N. E. Rep. 255). And on the principle that speculative profits are not deemed to have been within the contemplation of the parties, where there is some other more substantial basis on which to reckon the damages for breach of contract, it has been generally held that where the contract was as to the completion of a building or boat, or for the use of land or machinery, or the like, the rental value of the use of which the party was deprived should be taken as the measure of his damage, and that he could not substitute therefor or include therein profits which he might have made in such use. *Griffin v. Colver*, 16 N. Y. 489 (69 Am. Dec. 718); *Alexander v. Bishop*, 59 Iowa, 572; *Novelty Iron Works v. Capital City Oatmeal Co.*, 88 Iowa, 524; *Aber v. Bratton*, 60 Mich. 357 (27 N. W. Rep. 564); *City of Chicago v. Huenerbein*, 85 Ill. 594 (28 Am. Rep. 626); *Wright v. Mulvaney*, 78 Wis. 89 (46 N. W. Rep. 1045, 9 L. R. A. 807, 23 Am. St. Rep. 393); *Newark Coal Co. v. Upson*, 40 Ohio, St. 17; *Howard v. Manufacturing Co.*, 139 U. S. 199 (11 Sup. Ct. Rep. 500, 35 L. Ed. 147). So where an agent contracts to give his entire time to his employer for a compensation to be determined by commissions on sales of goods, his measure of damage for being thrown out of employment under the contract is the value of his time lost, and not the profits which he would have made; the value of his

time being a more satisfactory measure than the uncertain and indefinite profits. *Howe Machine Co. v. Bryson*, 44 Iowa, 159; *Wilson Sewing Mach. Co. v. Sloan*, 50 Iowa, 367; *Brigham v. Carlisle*, 78 Ala. 243. These last three cases are especially relied on by appellant, but the present case is plainly distinguishable from them. In those cases there was a measure of damage which could be resorted to for the purpose of giving the injured party relief for breach of contract; and the court in each case thought that this measure was more satisfactory than that to be reached by considernig the profits which might have been made by the complaining party, had he been allowed to perform his contract. If the question considered in *Howe Machine Co. v. Bryson, supra*, were now before us for the first time, we might, in view of the later authorities, incline to the view expressed in the dissenting opinion. As supporting that view, see, in addition to cases already cited, *Wells v. Association*, 39 C. C. A. 476 (99 Fed. Rep. 222, 53 L. R. A. 33). But in the case before us there is no such measure of damage available as was found in the cases relied on by counsel for appellant. Defendant did not contract to give his entire services to plaintiff in the sale of cigars, nor were his entire earnings dependent on the profits to be made out of this contract. Here it is impossible to estimate his damage by the value of the time lost. Nor is it possible to measure his damage by the labor and expense involved in introducing plaintiffs' cigars to the trade. To some extent, defendant has already been compensated for that labor and expense by the profits derived from the sale of plaintiffs' cigars during the time of the continuance of defendants' agency; and it would be manifestly impossible to determine the proportion of the labor and expense for which he had received compensation, and the proportion for which he was dependent by way of compensation on

the profits which should have been derived from future sales which he was not allowed to make. It is well established by the decided preponderance of authority that where future profits are in the contemplation of the parties, and there is no other basis on which damages for breach of contract can be estimated, such profits may be made the basis for the recovery of damages. *Dennis v. Maxfield*, 10 Allen, 139; *Dart v. Laimbeer*, 107 N. Y. 664 (14 N. E. Rep. 291); *Treat v. Hiles*, 81 Wis. 280 (50 N. W. Rep. 896); *Anvil Mining Co. v. Humble*, 153 U. S. 540 (14 Sup. Ct. Rep. 876, 38 L. Ed. 814); *Fairchild v. Rogers* 32 Minn. 269 (20 N. W. Rep. 191); *Simpson v. Railway Co.*, 1 Q. B. Div. 274. And see *Richmond v. Railroad Co.* 33 Iowa, 422, and *Richmond v. Railroad Co.*, 40 Iowa, 264, in which the right to recover prospective profits was, to some extent, recognized by this court. The right to recover prospective profits, and the admissibility of such evidence as was introduced in the case before us as bearing on the amount of such profits are fully sustained in *Mueller v. Spring Co.*, 88 Mich. 390 (50 N. W. Rep. 319). In that case an agent who had been given the exclusive right in a certain territory for the sale of a certain kind of mineral water, of which defendant was the sole proprietor, brought action for breach of contract in wrongfully terminating his agency for the sale of such water and giving it to another party; and the court uses this language: "The measure of plaintiff's damages was the profits which Mueller might have realized if defendant had performed its contract. *Loud v. Campbell*, 26 Mich. 239; *Leonard v. Beaudry* 68 Mich. 312 (36 N. W. Rep. 88.) While it may be true that Mueller would not have disposed of as much of the article as this firm did, yet the amount of their sales, while not conclusive upon defendant, was competent evidence to go to the jury upon the question of plaintiff's damages. It would have been proper to

draw out upon cross-examination what special effort had
been made by this firm to introduce and push this com-
modity, but the sales for the season named may have
been greater than for the previous season, because of a
demand created by what Mueller did, rather than by
any special effort by this firm. Here was a commodity
of which defendant was the sole proprietor, and for
which Mueller was made sole agent. All of this com-
modity reaching the territory named came from defend-
ant directly to Mueller, and through his agency. The
agency of the firm of Basset & L'Hommedieu succeeded
that of Mueller. They took it up where he left off, and
continued it for the five months for which he was to
enjoy its fruits. Proofs as to the amount actually sold
by them for that five months cannot be said to be
speculative." In a somewhat similar case [ *Wakeman v.
Manufacturing Co.*, 101 N. Y. 205 (4 N. E. Rep. 264,
54 Am. Rep. 676)], it is said that damages by way of
prospective profits "are nearly always involved in some
uncertainty and contingency. Usually they are to be
worked out in the future, and they can be determined
only approximately upon reasonable conjectures and prob-
able estimates. They may be so uncertain, contingent.
and imaginary as to be incapable of adequate proof, and
then they cannot be recovered, because they cannot be
proved. But when it is certain that damages have been
caused by a breach of contract, and the only uncertainty
is as to their amount, there can rarely be good reason
for refusing, on account of such uncertainty, any
damages whatever for the breach. A person violating
his contract should not be permitted entirely to escape
liability because the amount of the damages which he has
caused is uncertain. It is not true that loss of profits
cannot be allowed as damages for a breach of contract.
Losses sustained and gains prevented are proper ele-
ments of damage. Most contracts are entered into with

the view to future profits, and such profits are in the contemplation of the parties, and, so far as they can be properly proved, they may form the measure of damage. As they are prospective, they must, to some extent, be uncertain and problematical, and yet on that account a person complaining of breach of contract is not to be deprived of all remedy. It is usually his right to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and plainly traceable to it; and then it is for the jury, under proper instructions as to the rules of damages, to determine the compensation to be awarded for the breach. When a contract is repudiated, the compensation of the party complaining of its repudiation should be the value of the contract.'' To the same effect, see *Schumaker v. Heinemann*, 99 Wis. 251 (74 N. W. Rep. 785). Although such a measure of damages may be unsatisfactory and uncertain, yet, if it is the most satisfactory and certain measure which is attainable, justice is not to be defeated because a better measure is not at hand. ''The administration of justice frequently proceeds with reasonable certainty of accomplishing what is right, or as nearly right as human efforts may attain in the face of similar difficulties; and it does so by making the experience of mankind, or, rather, the judgment which is founded upon such experience, the guide.'' *Taylor v. Bradley*, 39 N. Y. 129, 144 (100 Am. Dec. 415). It seems never to have been held in this state that, where there is no other measure of damage for breach of contract, a contracting party is to be denied any damages because no better measure then the reasonable prospective profits of a business is attainable. We think that it would be manifestly unjust to deny to the defendant in this case any recovery whatever for breach of his contract because the contract itself contemplated and was based upon prospective profits.

The evidence introduced did furnish as fair a basis for estimating such profits as could be furnished with reference to the breach of any such contract, and we think it was admissible, and that the court properly submitted it to the jury. Such a contract as we have before us was recognized as valid in *Kaufman v. Manufacturing Co.*, 78 Iowa, 679, and *Rosenberger v. Marsh*, 108 Iowa, 47, although the question of measure of damages was not presented in those cases.—AFFIRMED.