JOHN F. HUNTINGTON, Appellant, v. JACOB HAISH COMPANY, Appellee.

**CONTRACTS:** Construction—Reasonable Contemplation of Parties. A
1 contract which provides that a salesman shall receive a commission on ''orders'' for goods within his contract territory, whether such ''orders'' were sent in by the salesman, his agents, or otherwise, does not contemplate a commission on a sale by the employer of the employer's entire stock of locally held goods.

**DAMAGES:** Measure of Damages—Loss of Commissions—Profits (?)
2 or Loss of Time (?) A salesman who, for a commission on sales, contracts for a limited period to use his best efforts to promote the sale of an article, need not, when the employer wholly incapacitates himself from carrying out the contract, wait until the contract period has expired, but may at once recover the *profits* which he fairly and reasonably would have earned during the remainder of the contract period, less (1) his expenses and (2) the value of his time. Evidence reviewed, and held to show such data on all these elements as to present a jury question on said measure of damages.

**CONTRACTS:** Breach—Nonentertainable Plea. The plea that a party
3 to a contract will suffer loss if he be compelled to comply with his contract cannot be entertained.

*Appeal from Pottawattamie District Court.*—THOMAS ARTHUR, Judge.

FEBRUARY 16, 1921.

ACTION by an agent employed to sell goods on commission, for damages for breach of the contract on the part of the principal. The petition was in three counts. Count 1 was dismissed by plaintiff. The court directed a verdict in favor of defendant on Counts 2 and 3, and the plaintiff appeals.—*Affirmed in part and reversed in part.*

*E. R. Jackson* and *John P. Organ,* for appellant.

*Tinley, Mitchell, Pryor & Ross* and *John Dowdall,* for appellee.

FAVILLE, J.—The appellant was a traveling salesman, skilled in the business of selling gasoline engines. The appellee is a manufacturing company, with its principal place of business at De Kalb, Illinois, engaged in the manufacture and sale of various implements, among them being gasoline engines, known as the "Chanticleer" engines.

1. CONTRACTS: construction: reasonable contemplation of parties.

On or about the 13th day of January, 1915, the parties entered into a written contract, by the terms of which the appellant was to promote the sale of said gasoline engines for appellee in the state of Nebraska and the three western tiers of counties in the state of Iowa for the period of three years. The portion of said contract material to the matters involved in this suit is as follows:

"The party of the second part agrees to use his best efforts to promote the sale of 'Chanticleer' engines in the above-described territory. All orders to be written on blanks furnished by the party of the first part, and all orders subject to the approval of the party of the first part.

"Party of the first part agrees to carry a reasonable stock of 'Chanticleer' engines, accessories and repairs on hand at Council Bluffs, Iowa; party of the first part to pay the transportation on these goods from DeKalb, Illinois, to Council Bluffs, Iowa; also to pay transfer charges, and not to exceed $20 per month for display and office room.

"Party of the first part agrees to turn over to party of the second part, all inquiries received by the party of the first part, from the above-described territory, and agrees to mail to party of the second part, a copy of invoices covering any engines or parts shipped into the above-described territory, and party of the first part agrees to give party of the second part credit for all orders for 'Chanticleer' engines, repairs or other goods that the party of the second part agrees to push the sale on, whether such orders are sent in by party of the second part, his agents, by mail or otherwise, for goods shipped into the territory of the party of the second part."

Under said contract, the appellant began the work of selling said gasoline engines, having an office in Council Bluffs. A stock of engines was furnished by the company, and maintained in Council Bluffs. In April, 1917, the appellee sold the entire gasoline-engine branch of its business to the Appleton Manufacturing Company, and notified the appellant of such sale, directing him to turn over all of the merchandise in his possession at Council Bluffs to the said Appleton Manufacturing Company. He was also informed by telephone by an officer of the appellee company that it had sold out the business at Council Bluffs, together with the stock of engines and other goods stored there.

Thereafter, the appellant brought this action, his petition being in three counts. Count 1 was dismissed. In Count 3, the appellant claims a commission, under the terms of his contract, on the stock of goods on hand at Council Bluffs, which were sold and delivered to the Appleton Manufacturing Company, as above stated. In Count 2, appellant claims damages for the loss of commissions which the appellant alleges he would have earned, had said contract been performed and carried out until its conclusion.

At the close of the plaintiff's case, the court sustained a motion for a directed verdict as to each of said counts, and entered judgment accordingly; and from such action this appeal is prosecuted.

The major propositions presented for our consideration are twofold: First, under the terms of the contract, is the appellant entitled to recover commissions on the stock on hand at Council

Bluffs, which was sold by the appellee to the Appleton Manufacturing Company; and second, was the appellant entitled to recover any so-called ''prospective profits'' under the contract?

I. We will first consider Count 3. The contract between the parties contains the following clause:

''Party of the first part agrees to give party of the second part credit for all orders for 'Chanticleer' engines, repairs, or other goods, whether such orders are sent in by party of the second part, his agents, by mail or otherwise, for goods shipped into the territory of the party of the second part.''

The evidence shows that the goods on which appellant claims a commission in this count of his petition were shipped by the appellee to Council Bluffs. They were kept there in store for sale in the territory allotted to the appellant, and we take it from the record that the stock was replenished from time to time, as ordered by the appellant. The amount remaining on hand in April, 1917, was sold by appellee to the Appleton Manufacturing Company, and delivered to its representative at Council Bluffs. Appellant's contention is that, under this state of facts, he is entitled to be credited with his commission at the agreed rate on all the engines and stock so sold by the appellee and turned over to the Appleton Company at Council Bluffs. It is conceded that the sale to the Appleton Company was not made at Council Bluffs, but was made in a foreign state, and that the stock of goods and engines on hand at Council Bluffs was turned over en masse to the Appleton Company.

The appellee contends that the contract did not contemplate a sale of this character, and that no commissions can be claimed by appellant because thereof.

It is a rule too elementary to require the citation of authorities that, in the construction of a contract, the court must, if possible, ascertain and give effect to the mutual intention of the parties at the time of entering into said contract. We must look to the situation of the parties, the purpose of the contract, the subject-matter about which the parties were contracting, and the surrounding circumstances and conditions, in order to determine the true intent of the parties and the proper construction to be placed upon the language used.

In this case, the evident purpose and intent of the parties

were that the appellant should be employed as a salesman for the appellee in the prescribed territory. It was contemplated that he should use his personal efforts, and build up the business. He was to receive a commission on all orders for appellee's goods within this territory during the life of the contract. The parties evidently contemplated that he would establish a trade for the appellee in the particular gas engine in question. They also contemplated that, in time, it might be that customers would order gas engines within this territory direct from the company, rather than through the agency of the appellant; and, to protect him, and reward him for his efforts in building up a trade and establishing the reputation of this engine in this territory, it was provided by the contract that he should not only be paid a commission on all orders for such engines that he procured, but on all orders sent in by his agents or by mail or otherwise, for goods shipped into the territory. The evident purpose was that the appellant should have commissions on all goods that he ordered for his territory, and for all goods ordered within the territory by any subagents whom he might appoint, or by customers within the territory who might purchase goods direct from the company.

The evidence shows that, shortly after appellant was appointed, the appellee placed in stock a considerable quantity of its goods in a building at Council Bluffs. The appellant testifies:

"These orders were filled from stock shipped from the factory. Some was shipped from here in Council Bluffs, if the stock was here. Once in a while, they shipped an engine from the factory, owing to not having it on hand here. I ordered stock from the factory for stock here in Council Bluffs. * * * A stock of engines was furnished by the company and maintained here in Council Bluffs. * * * I would mail the order to the factory for the engines on sales made, and they would give instructions to the Kontinental Kompound Kompany to ship the articles out to the trade as sold. The Kontinental Kompound Kompany had the storage of the stock maintained in Council Bluffs."

At the time the appellee sold its entire gasoline-engine busi-

ness to the Appleton Manufacturing Company, it sold these engines so in storage in Council Bluffs. The appellant contends that he is entitled to his commissions on all of the stock on hand and so sold to the Appleton Company. We think the appellant is in error in this contention. The contract between the parties did not contemplate any such sale as this. It expressly provides for the payment of commissions on "orders" for goods, whether the orders were sent in by the appellant or by his agents or otherwise. Surely, the goods shipped in by the company and held in stock to fill orders received in the territory were not goods "ordered" under the terms of this contract, or in accordance with the contemplation of the parties.

The court was right in directing a verdict for the appellee upon this count of appellant's petition.

II. The question of the recovery of prospective or speculative profits is one that has been frequently before the courts, and often discussed by text-writers. There is such divergence 2. DAMAGES: in the authorities that, viewed as a whole, it measure of damages: loss appears to be a case of "confusion worse conof commissions: founded." On one hand, we find attempts profits (?) or loss of time (?) to apply the ancient maxim, "There is no wrong without a remedy;" while, on the other, we are frequently met with the declaration, "There can be no recovery for that which cannot be made certain." Confusion has arisen because of a failure to distinguish between cases arising on contract and those lying in tort. Again, much of uncertainty has grown out of questions of evidence, and even greater difficulty in ascertaining and declaring the true rule as to the measure of damages.

It is conceded by both parties that so-called "prospective profits" may be recovered in a proper case, and under proper proof. Such are our previous holdings.

The question for determination on this branch of the case, however, is not so much whether the appellant might be legally entitled to recover for breach of contract on the part of the appellee, as whether there is any proper proof of the damages recoverable for such breach. It is admitted that there was a contract. It is admitted that the contract was partly performed by the appellant, and that he was continuing to operate under the contract, and was performing it on his part when he was

notified by the appellee of the sale of that portion of the defendant's business pertaining to gas engines. The grounds urged in the motion for a directed verdict, which was sustained, were, in substance, as follows:

1. That the plaintiff has not selected the correct measure of damages; that, under the evidence as it now stands, the correct measure of damages for the plaintiff would be only such amount as he had expended in preparing to complete his canvass for the remainder of the year 1917 and until January 13, 1918.

2. That the defendant was operating at a loss in manufacturing the gas engines, and could not be required, under the contract, to continue the manufacture of said engines and furnish the same to the plaintiff at a loss.

3. That the petition does not state a cause of action, and that, under the proof offered by the plaintiff, no damages whatever were proven.

4. That the evidence shows that the plaintiff had spent three months and a half of his time as city assessor, instead of acting as agent for defendant, and had breached the contract himself.

5. That, under the evidence, the plaintiff was selling other articles besides gasoline engines, and that it was the duty of the plaintiff to continue to sell said manufactured products through the remainder of the term provided for by the contract, and that said action could not be maintained until the measure of his damages could be so determined.

The appellant's petition on this count sought recovery for "the net profit, income, and commission from said business, as contemplated by the parties in said contract," until the end of the term thereof.

Upon the trial, the appellant offered proof of the contract and of his efforts thereunder. He testified as to the amount of his commissions while operating under the contract, beginning with the month of January, 1915, and up to and including April, 1917, when the appellee sold out. These commissions varied from $45.94 in one month to as high as $316.91 in another month—an average of $173.80 per month. These amounts were the commissions as computed and actually paid by the appellee to the appellant under the contract. These amounts seem to be

without dispute in the record. These included commissions paid on the sale of gas engines and other implements. Appellant testified:

"I paid my expenses on these trips on the territory. I did not keep an itemized account of my expenses for traveling. I didn't keep any complete record, only from remembrance on an average. My expenses were about $40 a month, during the last part of 1916 and the early part of 1917. This was my outlay in cash, not figuring my own time. The items included railroad fare to the places I would go to, and back, and if I was out over night some nights, whatever expenses that would be. I had expense for telephone when I was here at home. I was paying my own railroad fare and my own hotel bills and my telephone bill. In 1915, my expenses were greater than they were in 1916. They would probably run around $60 in 1915—1916—about $15 a week. I include everything in the way of expenses, except my own time. I had no employees working for me except two different men, about 60 days apiece, along in 1916. I did not pay them; their expenses were paid out of their sales. I allowed them a certain commission on all they sold, and they paid their own expense. I was not out any expense for that. About $50 or $60 of the income which I received in 1916 came from sales made by these men. I did not employ any office hire, and did not have any expenses for office hire."

He also testified:

"If I had employed anyone to do the same work I was then doing, it would have been on a basis of $5.00 per day for the time spent. $90 a month would have been a reasonable compensation for the time I was actually putting in,—$50 per month for salary, and 10 days in the month, and $40 for expenses. My commission from the sale of articles other than engines, such as saw outfits and pump jacks and other small items mentioned in the contract, I don't think would exceed an average of $10 a month. Some months it would be more, some nothing, and some months it might run to $20,—maybe two wash machines or feed grinders, pump jacks,—there was nothing in these."

We shall not attempt any discussion or review of the various authorities involving the question of a right to recover for prospective profits generally. This case involves only an agency

contract. That there can be recovery for breach of a contract of that character, in a proper case, is conceded by the appellee, and seems to be well established by the authorities. The question in the instant case is, therefore, narrowed to the proposition as to whether or not the appellant, under the contract in question, has furnished such proof of damages as entitled him to go to the jury on that question.

We first considered this question of damages in the case of *Howe Mach. Co. v. Bryson,* 44 Iowa 159. In that action, the defendant alleged that, by oral contract, he had been employed by plaintiff under an agreement that he was to devote his entire time to the sale of sewing machines, to be furnished him by plaintiff; that he was to rent a room, employ a team and other necessary means for carrying on the business, and was to be supplied with sewing machines at a price of 25 per cent below the retail rate. The agent performed his undertaking, but the principal refused to perform the contract, and failed to supply the agent with the machines which he was prepared to sell and could have sold; and damages were sought because of said breach of contract. We said:

"The real question in this case, then, is: Are the defendants entitled to recover for loss of time, or loss of profits?"

We held that the district court was correct in instructing the jury that the defendant might recover for the value of the time lost, but that the court erred in instructing, in the same connection, that the jury might take into consideration the market demand for the machines sold in the county. We said:

"The value of the time which the defendants lost should have been estimated generally, and without reference to the profits which might have been made under the contract."

Justices Beck and Day dissented from this opinion, and, in *Hichhorn, Mack & Co. v. Bradley,* 117 Iowa 130, 140, we said:

"If the question considered in *Howe Mach. Co. v. Bryson,* supra, were now before us for the first time, we might, in view of the later authorities, incline to the view expressed in the dissenting opinion."

In any event, the *Howe* case differs from the case at bar. In that case, the agent contracted to devote his time to the sale of sewing machines which were to be furnished him by the other

party. He was not, however, to sell on commission, nor to be paid anything by the company. The latter simply agreed to furnish the machines that were ordered by the agent at a certain price, which was to be 25 per cent below the retail price at which the agent was expected to sell the same. The distinction is apparent.

In *Hichhorn, Mack & Co. v. Bradley,* supra, the agent sued on a claim for damages for breach of a contract, under which he claimed he had been given the exclusive right to sell a certain brand of cigars within a certain territory. The agent was to incur the expense of introducing the cigars to the trade within this territory, and the principal agreed to furnish the cigars which the agent should order, as long as the agent continued to render the best service in his power in pushing the sale. During the life of the contract, the principal refused to longer furnish cigars. The agent claimed damages for such breach of contract. It was contended that the damages were too remote and speculative to be considered. We said:

"It is perfectly clear in this case that the profits to be derived from the sale of these cigars constituted the only consideration to the defendant for entering into the contract, and that the loss of such profits was in the contemplation of the parties at the time the contract was made, as a direct consequence which would result from its breach. And it is well settled that, when the loss of future profits is thus in the contemplation of the parties, and does directly result from the breach of the contract, the amount of profits thus lost may be recovered."

We further said:

"So, where an agent contracts to give his entire time to his employer for a compensation to be determined by commissions on sales of goods, his measure of damage for being thrown out of employment under the contract is the value of his time lost, and not the profits which he would have made, the value of his time being a more satisfactory measure than the uncertain and indefinite profits."

We also said:

"It is well established by the decided preponderance of authority that, where future profits are in the contemplation

of the parties, and there is no other basis on which damages for breach of contract can be estimated, such profits may be made the basis for the recovery of damages.''

In said case, it was held that the contract did not require the agent to give his entire services to the principal, nor were his entire earnings dependent upon the profits made on the contract. It was held that it was impossible to estimate his damage by the value of the time lost or by the labor and expense involved in introducing cigars to the trade, and that the evidence introduced by the agent furnished a fair basis for estimating the profits which he was entitled to recover for breach of the contract. The general character of this evidence was proof of the number of cigars sold by the agent in his territory up to the time when the principal refused to furnish any more under the contract, and also the number of the same kind of cigars sold in the same territory by his successor, under a contract from the principal. The court instructed the jury that, if it found the agent to be entitled to recover damages, in arriving at the amount it should consider the evidence above referred to, in connection with all the evidence relating to the price at which the cigars were to have been furnished, the price at which they were to have been resold, and evidence as to what it would have cost the agent to have handled and sold the cigars in the territory.

It is to be noticed that, in the *Hichhorn* case, the contract provided that the agent ''should render the best services in his power in pushing the sale of cigars.'' In the instant case, the contract provided that the agent ''should use his best efforts to promote the sale of the engines.'' We said, in the *Hichhorn* case:

''So, where an agent contracts to give his entire time to his employer for a compensation to be determined by commissions on sales of goods, his measure of damage for being thrown out of employment under the contract is the value of his time lost, and not the profits which he would have made, the value of his time being a more satisfactory measure than the uncertain and indefinite profits. * * * But in the case before us, there is no such measure of damage available as was found in the cases relied on by counsel for appellant. Defendant did not contract to give his entire services to plaintiff in the sale of cigars,

nor were his entire earnings dependent on the profits to be made out of this contract. Here, it is impossible to estimate his damage by the value of the time lost. Nor is it possible to measure his damage by the labor and expense involved in introducing plaintiffs' cigars to the trade. To some extent, defendant has already been compensated for that labor and expense by the profits derived from the sale of plaintiffs' cigars during the time of the continuance of defendants' agency; and it would be manifestly impossible to determine the proportion of the labor and expense for which he had received compensation, and the proportion for which he was dependent by way of compensation on the profits which should have been derived from future sales which he was not allowed to make.''

We think there is no legal distinction to be drawn between the effect of the contract of employment in the *Hichhorn* case and in the case at bar. In the former, the agent was ''to render the best services in his power in the sale of cigars.'' His compensation, however, was to be the difference between the price at which they were to be furnished to the agent and the price at which they were to be resold. In the instant case, the contract was that, for a limited period, the appellant was to ''use his best efforts'' to promote the sale of the gas engines, and his compensation was fixed by a certain commission on the engines so sold. The only distinction between the two cases is that, in one, the ''profit'' of the agent was the difference between the price at which the cigars were to be furnished and the price at which they were to be resold. In the other, the ''profits'' of the agent were earned by commissions paid him by the principal on the number of engines sold. If, in the *Hichhorn* case, the measure of damages was held not to be the loss of time, but rather the profits which, under the evidence, the agent would reasonably have made, there is no good reason why, in the instant case, the same standard and rule should not be applied, and the agent allowed to recover, not on the basis of the loss of time, but on the reasonable commissions or profits which he would have earned, had the contract been carried out.

Following the *Hichhorn* case, we hold that, in the instant case, the measure of recovery for damages for the breach of the contract would not be the value of the loss of the time of the

agent for the unexpired term of the contract, but it would be for the profits or the commissions which he would have earned, had the contract been carried out, less the expense necessary to the performance of the contract on his part, and less the value of appellant's time. We think such profits were fairly within the contemplation of the parties at the time of the making of the contract.

The real question for our determination is whether or not there was sufficient evidence in this case upon which the court should have submitted to the jury the question of the appellant's right to recover these prospective profits or commissions for the unexpired term of the contract. The evidence in behalf of the appellant showed for each month the amount of earnings paid him by the appellee on sales made, the average of which was $173.80 per month. The appellant testified that he did not keep an itemized account of his expenses, but that they were about $40 a month in 1916 and the early part of 1917; that they were greater in 1915, and would probably run about $60 a month, or $15 a week. The amount of his commissions on engines sold was fixed and determined at a certain per cent of the selling price. It is true that he handled a small amount of goods in addition to the gasoline engines, and that his commissions on such matters did not exceed an average of $10 a month. He also testified that, if he had employed anyone to do the same work, it would have been on the basis of $5.00 per day for the time spent; that $90 a month would have been reasonable compensation for the time actually put in,—$50 per month for salary, 10 days in the month, and $40 for expenses. It seems to us that, with this data before the jury, there was evidence upon which, under proper instructions, the jury would have been able to determine a fair and reasonable basis of compensation to the appellant.

We considered this question in the recent case of *Burghart v. Scioto Sign Co.*, 191 Iowa —. We think that, in the instant case, there was sufficient evidence of the items referred to in the *Burghart* case to carry the question to the jury.

This action was brought before the conclusion of the contract, and was instituted almost immediately upon the breach. We do not think that appellant was compelled to wait until the

expiration of the time limited by the contract before instituting an action of this kind, where the principal put it out of his power to perform further, by selling out the business. Presumptions are available to the appellant in such case. It is presumed that he would, at least, have performed the services in the future as he had in the past, and the evidence of the commission earned and of the expense incurred and of the value of the appellant's time furnished a basis for future earnings, which the jury could properly consider and from which the jury might be enabled to determine the amount, if any, of appellant's damage. It is true that, in actions of this kind, no exact yardstick can be used to determine the damages that shall be awarded. Such damages must, in a large measure, rest in the discretion of the jury; but where there is substantial evidence of the character introduced in this case, the amount of damages cannot be said to be "wholly speculative and unascertainable."

In the recent case of *Wachtel v. National Alfalfa Journal Co.*, 190 Iowa 1293, we said:

"Recoverable damages are often incapable of exact determination: i. e., damages for pain and suffering; permanent injuries; loss of profits."

In a similar case, the Supreme Court of Minnesota, in *Emerson v. Pacific Coast & Norway Packing Co.*, 96 Minn. 1 (104 N. W. 573), said:

"To allow only for loss of time and expenses would put a premium upon breaking contracts, and deny substantial justice."

The appellant could not recover the full amount of commissions that he might have earned for sales made in the territory assigned to him. His earnings would have to be depreciated by the amount of expense necessarily incurred in selling the goods. *Hichhorn, Mack & Co. v. Bradley*, supra; *Howard v. Brown*, 168 Iowa 410, 417; *Cohn, Baer & Berman v. Bromberg*, 185 Iowa 298, 307. They should also be depreciated by the value of his time released to him for other employment. *Burghart v. Scioto Sign Co.*, supra. In this case, there was evidence of his earnings and of the amount of expense necessarily incurred in selling the goods, and of the value of his time, sufficient to take the question to the jury, under proper instructions.

It is the contention of the appellee that the verdict should have been directed, because the evidence shows that the appellee, at the time, was manufacturing the gas engines at a loss, and that the appellant could not insist that the appellee should continue to perform its contract and manufacture and furnish the gas engines to the appellant during the life of the contract, when it was operating at a loss.

3. CONTRACTS: breach: non-entertainable plea.

Contracts cannot be breached merely because the performance of the same may result in a loss to one of the contracting parties. Authorities can be found to the effect that, where the employer discontinues his business and thereby loses his agent profit of sales upon commission, there can be no recovery, because it was within the contemplation of the parties that the employee took the chance of his employer's finding his business profitable and carrying it on. *Pellet v. Manufacturers' & M. Ins. Co.*, 104 Fed. 502. But the weight of authority generally is that, where an agent is selling on commission, upon breach of the contract without just cause by the employer, the agent is entitled to the profits, past or future, if evidence is produced to establish the same as a sufficient guide to a jury. *Emerson v. Pacific Coast & N. Packing Co.*, supra.

In the instant case, the appellee employed the appellant for a term of years. It may be more profitable for the appellee to breach the contract, and pay the appellant reasonable damages for so doing, than to perform the contract according to its terms. That is a matter for business judgment and determination by the appellee. But there is, and can be, no rule of law which exonerates one party from the breach of a contract merely because to continue the contract would result in a loss to such party.

It follows that the motion of the appellee for a directed verdict on Count 3 of the appellant's petition was properly sustained, and the action of the court in so doing is affirmed; and the motion of the appellee for a directed verdict on Count 2 of appellant's petition should have been overruled, and issues on said count of said petition should have been submitted to the jury; and the action of the lower court in sustaining the

motion for a directed verdict on said Count 2 of appellant's petition is reversed.—*Affirmed in part and reversed in part.*

EVANS, C. J., WEAVER and STEVENS, JJ., concur.

ARTHUR, J., took no part.