JOHN S. CAVENDER *et al.*, Respondents, *v.* WILLIAM WAD-
DINGHAM, Appellant.

### June 26, 1876.

1. When one negotiates through a real estate broker for the purchase of a lot,
the transaction, if completed, includes two contracts: one made with the
vendor, and another with the broker for his compensation. A suit by the
broker is not an attempt to enforce a contract made by defendant with a
third party.

2. W. employed C. & R. to purchase a lot for him upon certain terms, stipu-
lating that the compensation of the latter was to be deducted from the
purchase money going to the vendor, and was in no event to be paid by
W. *Held*, that W. would be liable, nevertheless, to C. & R. for their
proper fees, in case of a violation of the contract by W. in refusing to
take the property.

3. Where, at the time of making an alleged contract, one of the parties was,
by reason of the excessive use of intoxicating liquors, "in such unsound
mental condition that he was wholly void of judgment and discretion," no
contract, in contemplation of law, was in fact made, and evidence to that
effect is admissible under the general issue.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*Hill & Bowman*, for appellant, cited: Brown on Stat.
Fr. (ed. 1873), sec. 511, pp. 391, 402, 411, 414; Hook *v.*
Turner, 22 Mo. 333; Wag. Stat. 1015, 1033, 1034, sec. 8, p.
1040, sec. 15; Martin *v.* Martin's Admr., 27 Mo. 227; Irwin
*v.* Childs, 28 Mo. 576; Thompson *v.* Mosley, 29 Mo. 477;
Alterbery *v.* Powell, 29 Mo. 429; Green *v.* Gallager, 35
Mo. 226; Archer *v.* Merchants & Manufacturers' Ins. Co.,
43 Mo. 442; Ward *v.* Pine, 50 Mo. 38; Barry *v.* Coombe,
1 Pet. 640; Kay *v.* Curd, 6 B. Mon. 103; 1 Sugden on
Vend. (3d Am. ed.) 258, 259; *Ib.* 259, sec. 8 and notes, p.
260, note *t;* King's Admr. *v.* Wood, 7 Mo. 390; Sugden
on Vend. (ed. 1873) 198, 199, note 2, p. 251, sec. 218;
Hazard *v.* Day, 14 Allen, 494; Gaunt *v.* Hill, 1 Stark. 10;
Ballingall *v.* Bradley, 16 Ill. 373; Stratford *v.* Bosworth,
2 V. & B. 341; Whaley *v.* Bagnell, 1 Bro. P. C. 345;

Roberts *v.* Tucker, 3 Wels. Hurl. & Gord. 632 ; Browne on Stat. Fr. (3d ed.) 391, sec. 371 ; Smith *v.* Surnam, 9 B. & C. 561 ; Williams *v.* Bacon, 2 Gray, 387 ; Jenness *v.* Mt. Hope Co., 53 Me. 20 ; Benj. on Sales (Perkins' Am. ed.), 39, note *c*, 40, sec. 39 ; Thomas *v.* Blackman, 1 Col. 301, 312 ; Chevely *v.* Fuller, 13 C. B. 122 ; Lyman *v.* Robinson, 14 Allen, 242 ; Hutcheson *v.* Blackman, 3 Metc. (Ky.) 80 ; Carr *v.* Duval, 14 Pet. 77 ; Bruce *v.* Bishop, 43 Vt. 161–163 ; Eliason *v.* Henshaw, 4 Wheat. 225–228 ; Abbot *v.* Sheppard, 48 N. H. 16 ; Thurston *v.* Thornton, 1 Cush. 89 ; Allcot *v.* Boston Steam Flour Mill, 9 Cush. 17 ; Potts *v.* Whitehead, 5 C. E. Green, 55–58 ; *Ib.* 512 ; Schreck *v.* Pierce, 3 Iowa, 350.

*James O. Broadhead,* and *Broadhead & Overall,* for respondents, cited : Ferguson *v.* Hannibal & St. Jo. R. R. Co., 35 Mo. 452 ; Caldwell *v.* McKee, 8 Mo. 339 ; Pinkston *v.* Stone, 3 Mo. 119 ; Powers *v.* Nelson, 19 Mo. 190 ; Ponroz's Admr. *v.* Brown, 19 Mo. 302 ; Irwin *et al. v.* Chiles, 28 Mo. 576 ; Wag. Stat. 1015, sec. 12 ; Green *v.* Gallagher, 35 Mo. 226 ; Northrup *et al. v.* Mississippi Valley Ins. Co., 47 Mo. 435 ; The State *v.* Williams, 48 Mo. 210 ; Hazin *v.* Cliff, 10 Baldw. 303 ; Beatty *v.* Swarthout, 32 Barb. 293 ; Weaver *v.* Barden, 49 N. Y. 284 ; Webb *v.* Counce, 11 Mo. 9 ; Moses *v.* Burding, 31 N. Y. 462 ; McGavock *v.* Woodlief, 20 How. 221 ; Koch *v.* Emmerling, 22 How. 69 ; Barnard *v.* Monnot, 15 Am. Law. Reg. (N. S.) 209 ; Coleman *v.* Carrigan, 18 Barb. 67 ; Glentworth *v.* Luther, 21 Barb. 145 ; Holly *v.* Gosling, 3 E. D. Smith, 262 ; Chilton *v.* Butler, 1 E. D. Smith, 150 ; Beebe *v.* Roberts, 3 E. D. Smith, 194 ; Doty *v.* Miller, 43 Barb. 529 ; Story on Ag., secs. 29, 107 ; Riley *v.* Minor, 29 Mo. 459.

*Arba N. Crane,* for respondents, cited : Broadwater *v.* Darne, 10 Mo. 277, 286 ; Eaton *v.* Perry, 29 Mo. 96 ; Harrison *v.* Richardson, 1 Moo. & R. 504 ; Greene *v.* Gallagher, 35 Mo. 226 ; Bailey *v.* Chapman, 41 Mo. 536 ; 2 Wag. Stat. 1037, sec. 23.

LEWIS, J., delivered the opinion of the court.

The petition states that plaintiffs, under the partnership style of Cavender & Rowse, are real estate agents and brokers. That, on February 28, 1874, defendant employed them to purchase for him from Messrs. John A. and William H. Scudder " a lot of ground in blocks numbered 23 and 24 in the city of St. Louis, fronting one hundred and eighty-three feet and five inches on Main street, by a depth of one hundred and forty-two feet and three inches, being the same lot whereon the Ames porkhouse is situated;" that defendant instructed plaintiffs to offer $600 per foot for the property, and to effect the purchase at that price within ten days; that it was understood that plaintiffs' commissions on the transaction would be 2 1-2 per cent. of the purchase money, but it was stipulated that this should be paid by the Messrs. Scudder, and that plaintiffs would divide the same, when realized, with the defendant, allowing him one-fifth part thereof; that, on March 2d following, plaintiffs consummated the agreement for the purchase in exact accordance with defendant's directions; that the Messrs. Scudder, complying with the proposed terms, duly executed and acknowledged a general warranty deed of the property to defendant, and delivered the same to plaintiffs, authorizing them to receive the purchase money from defendant, and to retain out of it their commission of 2 1-2 per cent; that plaintiffs, on March 9th, offered the deed to defendant, but he refused to accept the same, or in any manner to ratify or complete the said judgment; that plaintiffs thus lost their commissions earned in the negotiation of the purchase, whereby they are damaged in the sum of $4,000, for which they ask judgment. Defendant's answer denies all the allegations in the petition.

The cause was tried before a jury, who rendered a verdict in plaintiffs' favor for $2,314.65. Defendant appealed.

The first question to which our attention is directed is whether, upon the facts stated, the plaintiffs had any right

of action against the defendant?  It is argued that they had
none, because it was expressly stipulated that their commissions were be to paid by the Messrs. Scudder, and not, in
any event, by the defendant; that this is an attempt to
hold a party responsible for violating his contract, not with
the party suing, but with a third party—the defendant here
having violated none except that made through the plaintiffs,
Messrs. Scudder.   But this argument ignores the prominent
fact that there were two distinct contracts.   One was made by
defendant, through his agents, in the purchase of the property.   The other was made with the agents, in securing
their services to bring about the purchase.   The latter is
the subject of the present suit.

When the plaintiffs were employed by the defendant to
effect a purchase for his benefit, they undertook to do so
for a consideration, which was clearly understood.   This was
that, in the event of success, they were to be compensated
according to the usages of their business, by a per centage
upon the amount of purchase money.   The defendant said
to them, in effect:  "You procure the consent of the
property owners to sell to me upon the terms indicated.   I
undertake, on my part, to consummate the trade by paying
the purchase money, so that you will realize your commissions."   The defendant's undertaking to take and pay for
the property, so that plaintiffs would get their compensation,
was as emphatic and as binding as if he had agreed to pay
the commissions himself.   Can he deliberately violate that
obligation, and then set up his own dereliction as a reason
why the other contracting parties shall lose their earnings?
It is here urged that, in " no event, was the defendant to pay
the commissions."   But that was a condition of the contract, and, like all other conditions, was based on an
assumption that the terms of the contract would be performed.   When the defendant failed on his part, the whole
was annulled.   The plaintiffs then sue him for the commissions, or their equivalent, not because the contract holds
him to their payment, but because, by his violation of the

contract, he has destroyed its obligatory force, and deprived the plaintiffs of the fruits of performance on their part; wherefore they are entitled to such a recovery in damages as will restore what the defendant has unlawfully compelled them to lose through his non-performance. The defendant can hardly say to the plaintiffs, " I have violated my contract; therefore, I hold you to its exact terms." It is very clear, in our view, that the petition shows a complete cause of action.

The testimony tended generally to prove the plaintiffs' case as set out in the petition. Defendant offered to prove that, at the time of his alleged employment of the plaintiffs to make the purchase, he was in a state of mental incapacity from the use of intoxicating liquors. On plaintiffs' objection the testimony was excluded. The court afterwards refused to instruct the jury, on defendant's application, that, if " the defendant was, by reason of the excessive use of spirituous liquors, at the time of the making of the alleged contract, in such unsound mental condition that he was wholly void of judgment and discretion," then the verdict should be for the defendant. These rulings appear to have been because the defense of mental incapacity to make the contract was not specially pleaded. They are upheld by counsel for the plaintiffs on the ground that such a defense was new matter, and, therefore, could not be introduced under a general denial of the plaintiffs' allegations.

While it is true that many defenses which might formerly have been proved under the general issue are now excluded by our practice act, unless specifically alleged as new matter, yet it does not appear from the views held by our Supreme Court that this can possibly be one of them. In *Corby* v. *Weddle*, 57 Mo. 452, defendant denied the execution of the note sued on, and, under that plea, introduced proof that his signature was obtained by fraudulent means. This was held proper by analogy with the general rule that, " when a deed is void *ab initio*, and not merely voidable, the plea

or *non est factum* is proper; and the facts showing the instrument to be void may be given in evidence to sustain such plea." No reason appears why the rule should not equally apply to parol contracts. In *The State* v. *Williams*, 48 Mo. 210, it was held that "an answer setting up new matter by way of defense should confess and avoid the plaintiff's cause of action." In the case before us the defense, if it amounted to anything, was that the defendant's contract was, by reason of his mental incapacity, absolutely void; which is simply saying in effect that, as a contract, it never had any existence, or was never made by him. There would be a manifest incongruity in averring that the defendant had made the contract as charged, but that the same, *ab initio*, was absolutely void. Yet this must be done if the defense be really new matter, and, therefore, admissible only in confession and avoidance. When at common law such a defense was permitted under the general issue, this was not by virtue of any specious reasoning or unexplained liberality, but because it was considered to be literally within the denial of execution. Said Lord Ellenborough, in *Pitt* v. *Smith*, 3 Camp. 33: "You have alleged that there was an agreement between the parties, and this allegation you must prove, as it is put in issue by the plea of not guilty; but there was no agreement between the parties if the defendant was intoxicated in the manner supposed when he signed the paper. He had not an agreeing mind." We think that a denial in general terms of the making of a contract puts in issue every fact essential to the original creation of the obligation. Such seems to be the doctrine of the leading authorities, and with it we cannot reconcile the action of the Circuit Court in the present case. For this error the judgment must be reversed and the cause remanded.

Complaint is made by defendant that the court refused permission to amend his answer, during the trial, so as to introduce the proper allegations of intoxication, etc., by

way of special defense, or new matter. We need not consider this question, since, from the views already given, it appears that the amendment was unnecessary. Many other points in the case have been exhaustively discussed by counsel. But, in their treatment by the Circuit Court, we find nothing to suggest that any comment here would contribute new assurances of a fair trial upon the next hearing.

All the judges concur.