NATT ATKINSON v. GEORGE W. PACK.

*Real Estate Broker—Contract, breach of—Measure of Damages.*

1. Where a real estate agent negotiated a sale of land for a person who agreed with him in writing to convey it to the purchaser who was to pay the agent's commissions and such person refused to convey it, the agent may recover in an action for the breach of the contract by showing that the intending purchaser was able and willing to carry out the trade.

2. The measure of damages for such breach of contract is the amount the agent would have received as commissions from the purchaser if the bargain had been complied with by the defendant.

CIVIL ACTION, tried before *Armfield, J.*, at December Term, 1893, of BUNCOMBE Superior Court.

A jury trial was waived, and the Court found the following facts:

"1. That the plaintiffs, at the several times hereinafter named, were and are still real estate brokers, engaged in the business of negotiating sales and purchases of real estate in said county and elsewhere, and these facts were known to the defendant, and at said times defendant owned, or had the power to sell, the tract of land in said county known as the Tennent or Antler Hall place.

"2. That early in June, 1890, one Harding, desiring to become the purchaser of said place, caused his attorney to ask plaintiffs whether or not they held it for sale, and being told that they did not, said attorney requested them to make inquiry of the defendant if the place was for sale, and if so, at what price it could be purchased.

"3. That the plaintiffs, through their Natt Atkinson, in pursuance of said request, thereupon inquired of defendant, who was then in New York City, whether he desired to sell said Tennant place, and if so, the price at which he would sell the same; and on the 13th day of June, 1890, defendant, in answer to said inquiries, sent a telegram in the following words:

"'To CAPT. NATT ATKINSON:

"'Place not for sale, but twenty-five thousand would be accepted if taken at once. One hundred and thirty-four acres.                                    G. W. PACK.'

"Upon receipt of this dispatch, the plaintiffs understanding therefrom that they might proceed to offer said place to said Harding at said price of twenty-five thousand dollars, inquired further of defendant whether he would pay plaintiffs commissions out of the said twenty-five thousand dollars, to which inquiry defendant replied by telegram on said 13th day of June, 1890, as follows:

"'To NATT ATKINSON:

"'Offer will not be accepted after to-morrow. Must be free of commissions from me.         G. W. PACK.'

"4. That thereupon plaintiffs informed said Harding of the terms upon which the place in question could be purchased, and that he would have to pay their commissions; and said Harding accepted the terms and agreed to pay the commissions.

"5. That on the next day, after first communicating with said Harding, the said Natt Atkinson sent to the defendant a telegram in these words:

"'To G. W. PACK,
    "'*Fifth Avenue Hotel, New York City:*

"'Your telegram of yesterday only received this morning. Your offer is accepted. We have sold the property at price given. Send letter embodying terms of sale. Party don't want to close papers before first of July unless you require it. Wire saying this is all right.
                              NATT ATKINSON.'

"And to this telegram the defendant, on the 14th day of June, 1890, sent the following in reply, to-wit:

"'To NATT ATKINSON:

"'Your offer, twenty-five thousand dollars net for Tennent property, is accepted. Must be closed in ten days. Ten thousand cash, balance to suit purchaser. Interest eight per cent. Will write.         G. W. PACK.'

"And on the same day defendant wrote the plaintiffs a letter, as follows:

"'FIFTH AVENUE HOTEL,
"'Madison Square, New York.

"'MY DEAR SIR:—Your telegram of this morning is received and I have just wired you: 'Your offer, twenty-five thousand dollars net for Tennent property, is accepted. Must be closed in ten days. Ten thousand cash, balance to suit purchaser. Interest eight per cent. Will write.' The growing crop is, of course, reserved, and Mr. Miller, the tenant on the place, holding over from Mrs. Tennent, has the right to remain until January 1st, 1891. He has not the right, however, to occupy the mansion, but only the smaller house and farm buildings. I go from here to Cleveland, where I will be Monday morning, and remain three or four days. I go thence to Asheville; as I expect to be there before the expiration of the ten days, please write me at Cleveland, giving me the name and residence of purchaser, and I will have a deed made out and properly executed and bring it with me to Asheville. Please write me how the laws of North Carolina require the deed to be executed when done in another State.

"'Very truly yours,      G. W. PACK.
"'To CAPT. NATT ATKINSON, Asheville, N. C.'

"Upon receipt of the foregoing letter the plaintiffs furnished defendant the information therein asked for, and on the 19th day of June, 1890, defendant wired plaintiffs in the words and figures following:

"'JUNE 19, 1890.    (Dated Cleveland, O., 19).
"'To CAPT. NATT ATKINSON:

"'Cannot conveniently delay closing later than 24th. Will have deed there.      G. W. PACK.'

" 6. That said Harding was duly notified that the transaction must be closed and completed not later than the said 24th day of June, 1890, and that he would have to pay for said property said sum of twenty-five thousand dollars and also plaintiffs' commissions, and said Harding accepted the terms, and the defendant was informed by the plaintiffs that Harding would be ready to pay the net price for the aforesaid property, and the defendant caused a deed of conveyance to said Harding to said property to be prepared, signed and acknowledged, and he brought the same to Asheville on the 23d day of June, 1890, intending to deliver it to Harding if he complied with the terms of the offer of sale aforesaid.

" 7. That said Harding was ready and willing to pay to the defendant the full net sum of twenty-five thousand dollars, and also pay plaintiffs their commissions, and to accept a conveyance of said Tennent place on the said 24th day of June, 1890; and the said Natt Atkinson, one of the plaintiffs, called on the defendant on the said day at his residence in Asheville and informed him of the readiness and willingness of said Harding to comply with defendant's terms and accept said deed, but defendant declined to conclude the transaction on the ground that the time in which the contract was to be closed had expired.

" 8. That the plaintiffs made the inquiries stated and shown in the complaint between the plaintiffs and defendant at the instance of Harding's attorney for the purchase of said tract of land, and the said Harding and defendant were never brought together in person and did not meet for personal negotiations.

" 9. That the usual commissions charged by real estate brokers on sales or purchases of real estate, where no rate is fixed, is five per cent. of the amount of the purchase price; and in this case the said Harding agreed to pay

commissions, without agreement as to the rate, on condition that the transaction was consummated, while the defendant stipulated with plaintiffs that he was not to pay any commissions."

Upon the foregoing facts as found and stated by his Honor, defendant prays the Court to hold, as matter of law applicable to such facts:

"1. That plaintiffs' having procured a valid contract from the defendant under which the said Harding might have compelled a conveyance of the land to him, the transaction was so far consummated as to entitle the plaintiffs to demand from Harding the payment of their commissions, and the plaintiffs cannot waive their right as against Harding and compel the defendant to pay commissions, or damages in lieu thereof.

"2. That although defendant was legally bound to convey the land to Harding, and there was a breach of his contract in failing to convey to him, plaintiffs are not in position to complain, and they cannot maintain their action against the defendant to recover damages for, or growing out of, such breach of said contract.

"3. That upon the facts found the plaintiffs were the agents to purchase, and not of the defendant to sell, the land in question, and the plaintiffs cannot recover of the defendant on the ground of agency for him.

"4. That as the facts show that plaintiffs were actively engaged in conducting the negotiation for Harding for the purchase of the land, and represented him in the matter, they were not mere middle-men to bring the parties together and as such entitled to recover of defendant for alleged services.

"5. That the plaintiffs are not entitled to recover of the defendant upon the facts in the case."

The Court declined to hold for the defendant as prayed,

and refused all the prayers numbered from 1 to 5, inclusive, and found, as conclusions of law, that plaintiffs were the agents of both the proposed purchaser and the defendant in the transaction referred to in the foregoing facts, and that the plaintiffs were entitled to recover damages of the defendant upon the facts of this case, and assessed their damages at twelve hundred and fifty dollars, and allowed them interest on said sum from the 24th day of June, 1890, and rendered judgment for plaintiffs accordingly.

To his Honor's refusal to apply the law to the facts found by him as prayed for, and to the conclusions of law found and to the judgment rendered, the defendant excepted and appealed to the Supreme Court.  It was agreed that if the plaintiffs were entitled to recover at all the amount of damages assessed was correct.

*Mr. James H. Merrimon*, for plaintiffs.
*Mr. M. E. Carter*, for defendant (appellant).

MacRae, J.: The question whether the plaintiffs were the agents of both Harding and defendant, or of Harding alone, or whether they were middle-men whose part was performed when the proposed seller and purchaser were brought together, is not a very important, nor, indeed, in in this case a necessary one.  The authorities cited by the learned counsel for the defendant abundantly sustain the plain principle that one cannot, without the knowledge and consent of both parties, act as agent both for the vendor and purchaser, because the interests he attempts to represent are adverse to each other.  If he were simply a middle-man whose business was to bring parties together so that they might make their own bargain there would be no valid reason why he might not stipulate for commissions from each party.

In this case it is sure that the plaintiffs were real estate brokers in the city of Asheville, and it will at once be understood that their business was the negotiating of sales and purchases of real estate between other parties upon commission. In the course of their business the plaintiffs negotiated with the defendant for the sale of the property named to one Harding at a price agreed to be paid on a day certain, the plaintiffs' commissions upon said sale to be paid by the purchaser, Harding.

Every detail of the transaction seems to have been arranged and upon the day set for the completion of the sale the plaintiffs, during business hours, notified the defendant that Harding was ready and willing to comply with the terms of sale; whereupon, without giving any valid reason therefor, defendant declined to fulfill his contract.

This action is brought not to recover *commissions* out of defendant, for it was expressly stipulated that defendant was to receive $25,000 *net* for the land, and that plaintiffs must look to Harding for their commissions. But the action is brought to recover damages for the non-performance of a contract, the evidence of which was in writing, made with plaintiffs that defendant would sell the said land to Harding at the price stated. The defendant seems to admit that there was a breach of contract on his part with some one, but he contends that it was with Harding and that the latter is the party responsible to plaintiffs for their commissions. But there were plainly two contracts made by plaintiffs, the one with defendant, the effect of which was that plaintiffs would provide a purchaser of the land at the agreed price, commissions to be paid by the purchaser; the other with the purchaser, that he would pay the plaintiffs' commissions upon the conclusion of the sale.

If through the negotiation of plaintiffs the parties had

been brought together and had concluded the trade between them, the plaintiffs would have been entitled to their commissions from Harding, the purchaser, according to the terms of their contract. But this action is for *damages;* the *gravamen* of the charge is that defendant committed the wrong and injury upon plaintiffs by a refusal, without cause, to comply with his contract *with plaintiffs* to sell the land to plaintiffs' principal, with the distinct understanding that plaintiffs were to be compensated by the purchaser. The natural effect and consequence of this refusal by defendant was the loss by plaintiffs of their commissions, and, in arriving at the measure of damages, his Honor (trying the case by consent without a jury) considered the amount of commissions agreed upon.

The case of *Cavender* v. *Waddingham*, 2 Mo., 551, is very much like our own. There the plaintiffs were employed by defendant to purchase for him a certain lot of land, but the plaintiffs' commissions were to be paid by the vendors; plaintiffs made the negotiation, procured the deed to be made to defendant according to the contract and tendered the same, demanding the purchase-money for the vendors; defendant refused to comply with his contract, and plaintiffs sued him to recover damages for the loss of their commissions by reason of the refusal by defendant to comply with the contract. It was held that plaintiffs had shown good cause of action against defendant.

There having been, then, a contract between plaintiffs and defendant, and defendant having refused to perform his part of it without fault of plaintiffs, they are entitled to recover as damages such sum as will compensate them for the loss sustained by the breach of contract by defendant. The measure of this damage is easily ascertained—the amount of commissions which plaintiffs would have been entitled to receive from the purchaser if the contract had been carried out.                                    No Error.