UNITED STATES AUTO COMPANY v. ARKADELPHIA MILLING COMPANY.

Opinion delivered October 6, 1919.

1. DAMAGES—BREACH OF CONTRACT—EXPECTED PROFITS TO BE EARNED AS COMMISSIONS.—Where the direct purpose of a contract is for one of the parties to earn commissions or profits, and the other party breaks the contract, the former party is entitled to recover profits actually lost as his damages for the breach of the contract.

2. CONTRACTS—SALE OF AUTOMOBILES—BREACH—DAMAGES.—The A. Company entered into a contract with the B. Company, automobile dealers, to sell cars for the B. Company within a certain territory. A. Company employed one G. to act as agent for it in selling the cars. B. Company then, without right, canceled the contract, and employed G. to sell cars for it in the designated territory. A. Company then sued B. Company for the value of the commissions earned on the sale of the cars in the said territory. *Held,* a verdict awarding damages to A. Company would be sustained.

*(NOTE)—See *Kansas City Sou. Ry. Co.* v. *Simmons,* p. 80.— (Reporter.)

3. Contracts—Breach—Damages—Profits.—For breach of contract, profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or when from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into.

4. Appeal and Error—Failure to set forth instructions in full.—On appeal the instructions should always be set forth in full, and a failure to do so invokes the presumption that correct instructions were given curing those complained of, if they are curable.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

*James A. Comer,* for appellant.

1. The second contract superseded the first entered into October 30, 1916. The contract was duly signed and it is not contended to be a forgery. The court erred in its instructions as to damages for loss of profits by breach of contract. 65 Mo. 534; 53 L. R. A. 33; 52 *Id.* 33; 78 Ala. 243; 78 Ark. 336; L. R. A. 1916 B, p. 836.

2. The court erred in refusing a new trial because the newly discovered evidence was material.

*Rogers, Barber & Henry,* for appellee.

1. There never was but one contract entered into, as the second contract was never executed and was never ratified or recognized. It was signed only by H. Flanagin, and the words Arkadelphia Milling Company were written above Flanagin's signature and it was a nullity or spoliation. The second contract was not binding, but the question was fairly submitted to a jury by instruction No. 4, asked by appellant.

2. There is no error in the instructions given or refused. Profits are a proper element of damages. 69 Ark. 219; 80 *Id.* 228. See also 105 Ark. 421; 113 *Id.* 556; 101 N. Y. Supp. 205; 139 U. S. 199. All the questions involved are settled by the verdict and it should stand.

STATEMENT OF FACTS.

Appellee sued appellant to recover damages in the sum of $1,929.18, which is alleged to be due as commissions on the sale of automobiles.

Appellant denied the allegations of the complaint and by way of counterclaim averred that appellee was indebted to it in the sum of $597.75 for an automobile purchased on the 11th day of May, 1917. The facts are as follows:

On October 30, 1916, appellant and appellee entered into a written agreement whereby the former allotted to the latter the exclusive sale of Maxwell automobiles in Clark County, with the exception of that strip lying south of Antoine River, including the town of Delight and also that part of Dallas County lying west of Princeton. The contract also contained a clause as follows:

"This contract will stand until further agreement by both parties."

There, also, appears in the record a contract of the date of April 18, 1917, with the following signatures thereto:

"United States Auto Co.
"By Thos. Joyce, Dealer.

"Arkadelphia Milling Co.
"By H. Flanagin, Special Dealer."

This alleged contract goes very much more into details than the first contract. It contains a clause that the agreement shall continue in force until June 30, 1917, but that it may be canceled by either party at any time upon written notice. This alleged second contract is the foundation of this lawsuit.

It is claimed by appellant that the signatures thereto are the genuine signatures of the parties. On the other hand it is claimed by appellee that the contract was signed by H. Flanagin, and that he had no authority to sign it for appellee and that appellee did not sign the contract, but that the words, "Arkadelphia Milling Company by" were added to the contract after it had been signed by H. Flanagin for himself.

Under the contract dated October 30, 1916, appellee bought cars at two different times, which were shipped to its place of business at Arkadelphia and were sold by it in due course of business. On the 18th day of April, 1917, appellee ordered a carload of five cars from appellant. When the car arrived there were only four autos instead of five. There was room for five automobiles if properly loaded and if there had been five automobiles in the car the freight would have been $31.70 each, but with only four in the car, the freight was $39.60 each.

According to the testimony adduced by appellee, Flanagin did not have any authority to sign the contract dated April 18, 1917, for it, and its name was not signed thereto by any one who had authority to do so. The evidence of its manager shows that the agents of appellant tried to get him to sign the contract, but that he refused to do so. The manager of appellee corporation did not know that appellant claimed that it had signed the contract dated the 18th day of April, 1917, until appellee received the letter dated May 15, 1917, notifying appellee that its contract dated about April 18, 1917, had been canceled.

Evidence was also adduced by appellee tending to show that it had made a contract with T. B. Griffin to sell cars for it in the territory allotted to it by appellant under the contract of October 30, 1916. After the alleged contract of April 18, 1917, had been canceled, appellant made a contract with Griffin to act as its agent in the sale of cars in the territory which had been allotted to appellee October 30, 1916.

During the months of May, June and July, 1917, T. B. Griffin sold sixteen Maxwell automobiles in the territory which had been allotted to appellee under the contract of October 30, 1916, and if the cars had been sold by it, it would have received as commissions $1,196 therefor. During these same months, C. E. Elms, another agent of appellant, sold its cars in the territory which had been allotted to appellee under the contract of October 30, 1916, and appellee's commissions on these cars are

estimated at $571.50. It is also shown by appellee that it paid as an advance on the car of automobiles $100, which has not been refunded to it.

H. Flanagin was a witness for appellee, and stated that he signed the contract of April 18, 1917, for himself and not for appellee. He stated positively that the words "Arkadelphia Milling Company by", were not written on the contract at the time he signed it.

On the part of appellant it was shown that the words "Arkadelphia Milling Company by" were written on the contract by H. Flanagin, who was an agent for appellee. Other evidence was adduced by appellant tending to show that the contract of April 18, 1917, was ratified by appellee. Witnesses for appellant also testified that the cars which were sold by Elms were not sold in the territory which had been allotted to appellee under the first contract. It is also shown by appellant that appellee was indebted to it in the sum of $597.75 for one Maxwell automobile purchased on the 11th day of May, 1917.

Other facts will be stated or referred to in the opinion.

The jury returned into court the following verdict: "We, the jury, after allowing defendant's counterclaim, find for the plaintiff in the sum of $257.28 above the counterclaim."

HART, J., (after stating the facts). It is insisted by counsel for appellant that the court erred in giving instruction No. 10, which is as follows:

"If you find for the plaintiff, the measure of damages will be the profits, shown to a reasonable certainty, which the plaintiff would have gained by virtue of carrying out the terms of their contract with the defendant, and by profits is meant the amount of the commissions on sales of cars, less the cost to plaintiff of effecting the sales."

(1) The subject of profits as damages is well recognized in the law and when the direct purpose of the contract is to enable one of the parties to earn commissions

or profits, he is entitled to recover profits actually lost as his damages for the breach of the contract by the other party. Uncertainty as to the amount of damages does not prevent recovery, but uncertainty as to whether any benefit or gain would have been derived at all does bar a claim for damages. *Hurley* v. *Oliver*, 91 Ark. 427; *Alf Bennett Lumber Co.* v. *Walnut Lake Cypress Co.*, 105 Ark. 421; *Wilkes* v. *Stacy*, 113 Ark. 556, and *Streudle* v. *Leroy*, 122 Ark. 189. See also *McGinnis* v. *Studebaker Corporation of America* (Ore.), Ann. Cas. 1917 B and note.

(2-3) A comprehensive statement of the rule and one much quoted is that of Justice Lamar in *Howard* v. *Stillwell, etc., Mfg. Co.*, 139 U. S. 199-206, 11 U. S. Sup. Ct. 501-503. "Profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into."

In the case at bar the evidence for appellee tended to show that appellant had shipped it some cars under the first contract, which had been sold by appellee. Appellee had appointed T. B. Griffin as its agent in the sale of the cars. When appellant canceled the contract with appellee it made a contract with Griffin to sell cars for it in the same territory as that allotted to appellee under the first contract. Griffin sold sixteen cars in that territory and the commissions which would have accrued to appellee, had the sale been made by it, would have amounted to $1,196. Under the provisions of the first contract it was to stand until further agreement by both parties.

According to the testimony of appellee it never signed the second contract and never ratified it after-

wards. Therefore, according to the evidence adduced in favor of appellee, the first contract was still in force and the court did not err in giving the instruction.

(4) Counsel for appellant also assigns as error the action of the court in giving other instructions to the jury. We can not consider these assignments of error for the reason that counsel has not set out in full the instructions given by the court.

This court has uniformly held that the instructions should always be set forth in full and that a failure to do it invokes the presumption that correct instructions were given curing those complained of, if they are curable. The object of the rule is to facilitate the work of the court. If each judge was required to explore the transcript to see if the instructions as set out are in the exact language in which they were given by the court, an unnecessary amount of time would be consumed, and a great delay in deciding the case and in preparing the opinion would result. *Jacks* v. *Reeves,* 78 Ark. 428; *Harrelson* v. *Eureka Springs Electric Co.,* 121 Ark. 269, and *Morris* v. *Raymond,* 132 Ark. 449.

The salutary effect of this rule is apparent in the present case. Counsel for appellant has not undertaken to set out all the instructions. He has only undertaken to set out the instructions of which he now complains. There does not appear to be any inherent defects in them, and under the rule stated above the presumption is that, if erroneous in any respect, the errors were cured by the other instructions given by the court. Counsel for appellant has not set out in full the instructions of which he now makes complaint, but has only set out what he considers the substance of them. In some instances counsel for appellee claim that the instructions as given by the court are not susceptible of the meaning given to them by counsel for appellant in his brief. Hence the judges would have to explore the transcript in order to determine whether the language of the instructions was susceptible of the meaning claimed by appellant before they could proceed to a determination of whether or not

the instructions complained of were correct. If the instructions had been copied in full, each judge in reading the brief could go at once to a consideration of the question of whether or not the instructions were correct, instead of waiting to explore the transcript to see if the language of the instructions warranted the meaning attributed to them by counsel for appellant.

We find no prejudicial error in the record and the judgment will be affirmed.