## CALKINS v. F. W. WOOLWORTH CO.*

Circuit Court of Appeals, Eighth Circuit. May 18, 1928.

No. 7900.

1. Brokers ⊂⊃88(2)—Evidence as to oral contract for commission in negotiating lease required submission to jury.

Evidence in action to recover damages for breach of alleged oral contract for commission in negotiating a lease, relative to whether there was a contract to that effect, *held* sufficient to require submission to jury.

2. Brokers ⊂⊃40—Parties to oral contract for commission in negotiating lease must have contemplated assumption of legal rights and duties to render contract actionable.

In order to render alleged oral contract for commission in negotiating lease actionable, parties thereto must have contemplated the assumption of legal rights and duties, and not the rendition of a gratuitous service on the part of broker.

*Rehearing denied August 8, 1928.

3. Contracts ⊚⟞10(2)—Contract for commission in negotiating lease, if lacking mutuality in inception, became binding on prospective lessee after performance by broker.

Contract for · commission in negotiating lease, if lacking mutuality in its inception, became binding after performance by broker by finding suitable location and submitting it to prospective lessee.

4. Brokers ⊚⟞40—Agreement for broker to submit lease to prospective lessee held to have contemplated broker should act as such only for prospective lessee.

Owner of building and broker, agreeing that broker might submit lease to prospective lessee, with express stipulation that he should submit it to no other, held to have contemplated that broker should act, not in behalf of owner, but only as broker of prospective lessee.

5. Damages ⊚⟞6—Damages may be uncertain as to existence, nature, or cause.

Damages may be uncertain, either as to their existence, or their nature, or their cause.

6. Damages ⊚⟞184—Proof must show with reasonable certainty that plaintiff suffered damages because of wrongful act or omission of defendant.

Proof, justifying recovery for breach of contract, must show with reasonable certainty that plaintiff suffered damages, and that such damages resulted from wrongful act or omission charged against defendant.

7. Brokers ⊚⟞88(4)—Evidence relative to broker's ability to have contracted with owner for commission, but for prospective lessee's breach of contract, required submission to jury.

In action to recover damages for breach of alleged oral contract to negotiate lease, evidence as to whether broker would have been able to negotiate a contract with owner to act as its broker for commission, and would have earned such commission, but for wrongful act of prospective lessee in breaching its alleged contract with broker, held sufficient to require submission to jury.

8. Damages ⊚⟞6—Recovery will not ordinarily be denied because damages are difficult of ascertainment.

Generally, where the cause and existence of damages have been established with sufficient certainty, recovery will not be denied because they are difficult of ascertainment, since the amount in such case may be fixed by jury, in exercise of sound discretion, under proper instructions from court.

9. Damages ⊚⟞6—Liability for breach of contract cannot be escaped because of uncertainty as to amount of damages.

A party who has broken his contract ordinarily will not be permitted to escape liability because of uncertainty as to amount of damages resulting therefrom.

10. Brokers ⊚⟞88(6)—Evidence as to loss resulting to broker from prospective lessee's breach of contract for negotiating lease required submission to jury.

In action to recover damages for breach of alleged oral contract for negotiating lease, evidence relative to usual and customary commission to broker for successfully negotiating such lease *held* sufficiently certain as to amount of damages to authorize submission to jury.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by Clifford W. Calkins against the F. W. Woolworth Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

Raymond G. Young, of Omaha, Neb. (Matthew A. Hall and Harvey M. Johnsen, both of Omaha, Neb., on the brief), for plaintiff in error.

F. H. Stinchfield, of Minneapolis, Minn., and Henry Monsky, of Omaha, Neb. (Arthur F. Mullen, of Omaha, Neb., on the brief), for defendant in error.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. This is an action at law brought by Clifford W. Calkins against the F. W. Woolworth Company to recover damages for the breach of an alleged oral contract. At the close of the evidence in the trial below, the jury under instructions of the court returned a verdict in favor of the Woolworth Company. Judgment was entered on this verdict, and this is a writ of error therefrom.

Calkins was a real estate broker in the city of Omaha, Neb., specializing in the negotiation of long-time leases on down-town business property. Calkins testified that in 1921 he negotiated a lease from the Brandeis Investment Company to the Woolworth Company of the Boston Store building in Omaha; that in this transaction C. E. Mickler, of Minneapolis, the northwestern district manager of the Woolworth Company, represented that company; that thereafter Mickler engaged the plaintiff to act as broker for the Woolworth Company in subleasing certain portions of the Boston building; that on July 31, 1921, at Minneapolis, Mickler stated to Calkins that the Woolworth Company desired to establish a second store at Omaha, and that it wanted Calkins to secure for it a building lease therefor within a designated area in Omaha, and proposed that, if Calkins would first submit to the Woolworth Company all locations that he should find which would be suitable for the needs of the Woolworth Company, and should find a location suitable to the Woolworth Company,

for lease on terms acceptable to it, it would contract for such lease through Calkins.

Calkins further testified that he accepted Mr. Mickler's proposition and agreed that he would work very hard to secure such a lease. Calkins further testified that Mickler agreed that, in the event the Woolworth Company should turn down leases submitted by Calkins, the latter might then submit them to other prospects.

Calkins further testified that thereafter, from time to time, he found locations which he thought might be suitable to the Woolworth Company, and first submitted them to that company, and that the Woolworth Company rejected all of such locations.

Calkins further testified that on June 19, 1924, he learned from John L. Kennedy, president of the United States National Bank, that the bank was desirous of leasing the first floor and basement of its bank building in Omaha; that Kennedy opened the subject by asking Calkins his opinion as a real estate man as to the rental value of the first floor and basement of the bank building; that Calkins then asked Kennedy if the bank was going to lease it; that Kennedy replied in the affirmative; that Calkins then asked him at what price; that Kennedy replied $75,000 per year; that Calkins then said, "Well, that is a fairly reasonable price; I have a prospect that I want to submit this to;" that Kennedy then replied, "Well, Mr. Calkins, we don't want too many figuring on this; we already are figuring with Kresge Company, Kress Company, and the Bedell Company;" that Calkins then advised Kennedy that his prospect was the Woolworth Company; that Kennedy expressed surprise that the Woolworth Company desired another location in Omaha; that Calkins then advised Kennedy that he had been undertaking for two or three years to secure a second location for the Woolworth Company in Omaha; that Calkins then said, "May I submit this to Woolworth Company?" and that Kennedy replied, "Well, you can submit it to the Woolworth Company, but do not submit it to any one else;" that Calkins then said, "All right, Mr. Kennedy; I will follow your instructions."

Calkins further testified that on June 19, 1924, he wrote and mailed Mickler the following letter:

"Dear Mr. Mickler: Feeling you should have all information relative to Omaha locations which comes to my attention, I am herewith advising you that the entire first floor of the United States National Bank building, at the northwest corner of Sixteenth and Farnam street, can be rented on a rea-sonably long time lease for approximately $75,000 per year. This building is located between the McCrory building and Farnam street and has a 74-foot frontage on Sixteenth street and is 120 feet deep on Farnam and has a basement under the entire room.

"This price includes heat.

"I have been informed by the president of the bank that the Kresge Company, the Kress Company, and the James Bedell Company of New York City are seriously figuring on this location.

"I think I have enough influence to get you the preference if you are interested and beg to state further to you that I am not in any way representing the three other parties who are now figuring on the property."

Calkins further testified that at about this time certain differences arose between him and the Woolworth Company relative to a portion of the commission on a lease of a basement by the Brandeis Investment Company to the Woolworth Company, negotiated through Calkins. Calkins further testified that on June 30, 1924, the Woolworth Company wrote him as follows:

"Dear Sir: In reply to your letter in regard to the United States National Bank building in Omaha, wish to say that we have decided not to negotiate with you for this location."

The evidence further showed that, after Calkins had submitted the United States National Bank building location to the Woolworth Company, it sent Mr. B. E. Nickoll, a real estate broker, to Omaha, to negotiate for it a lease of the bank building location and authorized him to pay a rental up to $75,000 per year; that on or about July 13, 1924, Nickoll and Henry Monsky and Kennedy reached an agreement for a lease of the bank building to the Woolworth Company at a rental of $70,000 per year; that the bank as a part of the terms of the lease agreed to pay Monsky and Nickoll, the representatives of the Woolworth Company, a commission of $15,000.

A formal written lease was executed by the bank on July 19, 1924, and by Woolworth Company August 14, 1924.

The evidence in behalf of the plaintiff further showed that Calkins, from time to time between the time the alleged oral contract was made and June 19, 1924, performed certain minor services for the Woolworth Company for which he made no charge, and that, during the time he was handling these minor matters, Mr. W. C. Allen, assistant to Mickler, thanked him for looking after such matters for the Woolworth Company, and

stated, "Well, you are not getting any compensation for doing those things, but, of course, you will get your compensation when you find us the second store location at Omaha," and that Calkins replied thereto, "That is what I intend to do."

The evidence further showed that during certain negotiations for the compromise of the claim of Calkins against the Woolworth Company, B. D. Miller, vice president of the Woolworth Company, and Mickler, admitted that, if Calkins first advised the Woolworth Company that the first floor and basement of the bank building was being offered for lease, it was the duty of the Woolworth Company to negotiate for such lease through Calkins. The evidence further showed that Calkins first advised the Woolworth Company that the first floor and basement of the bank building were being offered for lease and the terms thereof.

The evidence further showed that the customary and usual broker's commission for such a lease was $37,800.

The theory of Calkins' case is that, in consideration of his agreeing to undertake to find a suitable location for a second store for the Woolworth Company in Omaha, and to prefer the Woolworth Company by first submitting to it all locations found, the Woolworth Company agreed, in the event a suitable location was found for lease on terms and conditions agreeable to the Woolworth Company, that it would lease such location through Calkins, and thereby enable him to earn and receive from the lessor of the premises the customary broker's commission therefor.

The trial court was of the opinion that the services which Calkins agreed to render were the ordinary services gratuitously rendered by real estate brokers; that the promise to render such services and the rendition thereof for that reason constituted no consideration for the promise of the Woolworth Company to lease the premises through Calkins; that Mickler, for the reasons above stated, contemplated no binding contract should arise because of the mutual promises made by the Woolworth Company and Calkins; and that the contract was unenforceable for want of consideration.

Counsel for Calkins contend that the evidence adduced established prima facie an enforceable contract, the breach thereof, and resultant damages, and that the court erred in failing to submit the case to the jury under proper instructions.

On the other hand, counsel for the Woolworth Company contend that the judgment below was right, and in support thereof assert three principal propositions:

[1] First. Counsel for the Woolworth Company contend that the evidence failed to establish a contract. They base this contention upon the fact that Mickler denied the alleged conversation with Calkins in Minneapolis, and the further fact that in the letters which Calkins from time to time wrote to Mickler, submitting various locations at Omaha for lease to the Woolworth Company, Calkins at no time referred to the contract which he now alleges was in existence. The testimony of Calkins and the denial thereof by Mickler presented a clean-cut issue of fact for the determination of the jury, unless there was other evidence in the case which so strongly corroborated Mickler's denial that the court, in the exercise of a sound judicial discretion, would be bound to set aside a finding in favor of Calkins. We find nothing in the record militating so strongly against the testimony of Calkins as would in our judgment take the issue of fact away from the jury. It is a singular circumstance that Calkins did at no time in the correspondence mention the contract. On the other hand, there is a circumstance evidenced by these letters which favors the contention of Calkins. In practically all of these letters, Calkins recognized a duty arising from some reason, which might well be the contract in question, to first submit the lease locations which he found to the Woolworth Company, for acceptance or rejection, before submitting them to any other prospective lessee. Furthermore, in the negotiations looking to a settlement of the claim of Calkins, Miller, vice president of the Woolworth Company, and Mickler, both tacitly admitted that, if Calkins first submitted the bank building lease to the Woolworth Company, it was the duty of the Woolworth Company to negotiate its lease therefor through Calkins.

[2] It is true that, in order to render the alleged contract actionable, Mickler and Calkins must have contemplated the assumption of legal rights and duties, and not the rendition of a gratuitous service on the part of Calkins. Tucker v. Pete Sheeran Bro. & Co., 155 Ky. 670, 160 S. W. 176, 178; Columbus, H. V. & T. Ry. Co. v. Gaffney, 65 Ohio St. 104, 61 N. E. 152, 154; Tank v. Rohweder, 98 Iowa, 154, 67 N. W. 106, 107; 9 Page on Contracts (2d Ed.) vol. 3, § 1446. The services which Calkins agreed to render under the alleged contract went further than the ordinary gratuitous services usually rendered by real estate brokers, in that Calkins obligated himself, not only to search for a

location suitable to the Woolworth Company's desires, but to first submit to the Woolworth Company in preference to any other client all such locations found. We think the facts and circumstances disclosed by the evidence would warrant a jury in finding an intent on the part of the parties to enter into a legal and binding contract.

[3] If it could be said that the contract in its inception lacked mutuality, it became binding upon the Woolworth Company after performance by Calkins, namely, after he found a suitable location and first submitted such location to the Woolworth Company. Storm v. U. S., 94 U. S. 76, 83, 24 L. Ed. 42; Chicago, M. & St. P. Ry. Co. of Idaho v. U. S. (C. C. A. 9) 218 F. 288, 301; Mississippi Glass Co. v. Franzen (C. C. A. 3) 143 F. 501, 507, 6 Ann. Cas. 707. We therefore conclude that the testimony made out a prima facie case of a valid subsisting contract between Calkins and the Woolworth Company, and presented a controverted issue of fact for the determination of a jury.

[4] Second. Counsel for the Woolworth Company contend that there was no contract, either express or implied, between the bank and Calkins for the payment of any commission. It will be observed that Calkins first advised Kennedy that he had been seeking such a lease for the Woolworth Company for two or three years, and that Kennedy, in agreeing that Calkins might submit the lease to the Woolworth Company, expressly stipulated that he should submit it to no other prospective lessee. We are inclined to the conclusion, in view of these facts, that it was not the understanding of Calkins and Kennedy that the former should act as broker in behalf of the bank, but only as the broker of the Woolworth Company. Whether this conclusion as a matter of law precludes a recovery depends upon whether the damages resulting from the breach of the alleged contract were within the contemplation of the parties and were not so uncertain, speculative, and contingent as to preclude a recovery.

Third. Counsel for the Woolworth Company contend that the damages were speculative, contingent, and uncertain, and not within the contemplation of the parties at the time the alleged contract was entered into.

Counsel for Woolworth Company, in support of their contention that the damages which plaintiff seeks to recover were not within the contemplation of the parties, cite and rely upon the following authorities: Windman v. Bulkowstein (Sup.) 168 N. Y. S. 57; Mulhall v. Bradley & Currier Co., 50 App. Div. 179, 63 N. Y. S. 782; Hevia v. Wheelock, 162 App. Div. 759, 148 N. Y. S. 165; Hill v. Alexander (Tex. Civ. App.) 195 S. W. 957—which were actions to recover a real estate commission in cases involving exchanges of real estate, where one broker acted for both parties, and with knowledge of both parties was to receive a commission from each. In these actions, the broker sought to recover from the defendant, one of the parties to the contract of exchange, commission which the broker would have received from the other party, but for the wrongful act of the defendant in failing to carry out such contract. In each of these cases, the defendant had either expressly agreed to pay the broker a stipulated commission, or had impliedly agreed to pay him the customary commission for his services. Such commission, and not the commission which the broker was to receive from the other party to the contract of exchange, was clearly the consideration in contemplation of the broker and defendant when they entered into their contract of agency. The terms of the contract of agency did not disclose that the parties had in mind and contracted with reference to the commission which the real estate broker was to receive from the other party to the contract of exchange.

The instant case is more analogous to the following cases than to the above authorities cited and relied upon by counsel for the Woolworth Company: Eells Bros. v. Parsons, 132 Iowa, 543, 109 N. W. 1098, 11 Ann. Cas. 475; Livermore v. Crane, 26 Wash. 529, 67 P. 221, 57 L. R. A. 401; Atkinson v. Pack, 114 N. C. 597, 19 S. E. 628; Cavender v. Waddingham, 2 Mo. App. 551; Darling v. Moscowitz (Sup.) 159 N. Y. S. 672; Harris v. Van Vranken, 32 N. D. 238, 155 N. W. 65. See, also, 9 C. J. p. 587; Brawner v. Cumbie (Tex. Civ. App.) 264 S. W. 497, 499, 500; Morgan v. Whatley & Whatley, 205 Ala. 170, 87 So. 846.

In Eells Bros. v. Parsons, supra, plaintiff, a real estate broker, agreed to accompany defendant to look at certain land held for sale by a land company. Defendant agreed that he would purchase land from such company or others to whom plaintiff might introduce him if he found any land which suited him. Plaintiff further agreed that he was not to be paid any commission by defendant, but was to look to the owners of such land for his commission. Defendant failed to perform a written contract for the purchase of land entered into with a party introduced by plaintiff. The court held defendant liable

in an action for breach of his original contract with plaintiff for the amount of commission which the vendor agreed to pay plaintiff when the sale to defendant was completed.

In Livermore v. Crane, supra, the defendant agreed with plaintiff, a real estate broker, that defendant would purchase certain real estate at a certain price, and upon stated terms if plaintiff could procure such price and terms from the owner. Plaintiff and defendant further agreed that plaintiff was to obtain his commission of $500 for making such sale from the owner. Plaintiff induced the owner to sell the property for the price and upon the terms proposed and procured a written contract satisfactory to both parties to be executed by them. The defendant failed and refused to perform the contract of purchase. The court held that the plaintiff was entitled to recover from the defendant the commission which the owner agreed to pay upon the consummation of the contract of purchase.

In Atkinson v. Pack, supra, the owner of land agreed in writing with a real estate broker to convey it at a stated price and terms to a prospective purchaser from whom the broker was to receive his commission. The owner refused to convey the real estate to such purchaser who was able and willing to take and pay therefor. The court held that the plaintiff was entitled to recover from the owner upon the original contract between the plaintiff and such owner, and that the measure of plaintiff's damages was the amount of commission he would have received from the purchaser had defendant complied with his contract.

The applicable rule of law was stated by the Supreme Court in Howard v. Stillwell & Bierce Mfg. Co., 139 U. S. 199, 206, 11 S. Ct. 500, 503 (35 L. Ed. 147), as follows:

" * * * Profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into."

In the instant case the sole benefit which Calkins could possibly derive from the contract sued on was the commission which he might earn and receive from the lessor of the premises. The promise of the Woolworth Company to deal only through Calkins, and thereby enable him to earn such commission, was the only consideration moving to Calkins. Because of these facts, such commission must have been in the minds of the parties when they entered into such alleged contract.

[5] Were the damages for which plaintiff seeks recovery so uncertain, contingent, or speculative that they could not constitute the basis of a recovery?

Damages may be uncertain either as to their existence, or their nature, or their cause. 17 C. J. § 87, p. 754.

[6] Were the damages in the instant case uncertain, either as to their existence or their cause?

The rule is that the proof must show with reasonable certainty that plaintiff suffered damages, and that such damages resulted from the wrongful act or omission charged against the defendant. Black v. Hogsett, 145 Ark. 178, 224 S. W. 439, 440; Griffin v. Colver, 16 N. Y. 489, 491, 494–495, 69 Am. Dec. 718; Western Union Telegraph Co. v. Ivy (C. C. A. 8) 177 F. 63, 66; Gagnon v. Sperry & Hutchinson Co., 206 Mass. 547, 92 N. E. 761, 763; Watson & Sons v. Amer. Paper Products Co., 228 Ill. App. 345, 348; U. S. Auto Co. v. Arkadelphia Milling Co., 140 Ark. 73, 215 S. W. 641, 642; Page on Contracts (2d Ed.) vol. 6, § 3185; Sedgwick on Damages (9th Ed.) vol. 1, § 170, p. 317; Williston on Contracts, vol. 3, § 1345, p. 2400; 17 C. J. §§ 88, 89, pp. 754, 755.

[7] Applying this rule to the instant case, the question is: Did the proof show with reasonable certainty that Calkins could and would have negotiated a contract with the bank to act as its broker for a commission, and could and would have earned such commission, but for the wrongful act of the Woolworth Company in breaching its alleged contract with Calkins? The proof showed that Calkins was a broker of long experience in the handling of leases of the character involved in this case; that the bank regarded Calkins as a competent and reputable broker; that for a considerable period of time prior to the conversation between Calkins and Kennedy on June 19, 1924, the bank, acting through its own officers, had failed in its efforts to negotiate a lease with several of the other chain store companies; that the amount of space was larger than these other companies were able to use; that the bank did not know the Woolworth Company was in the market for such a lease; and that the bank ultimately did agree to pay a commission of $15,000 to Monsky and Nickoll, the

representatives of the Woolworth Company, in the negotiations for the lease. We think it follows as a reasonable and natural conclusion from the evidence adduced that Calkins could and would have negotiated a contract with the bank to act as its broker, and could and would have earned a commission as such broker, but for the alleged wrongful act of Woolworth Company.

That it was necessary for Calkins to successfully negotiate a contract with the bank in order to earn such commission does not, in our judgment, render the damages uncertain. In many cases recovery of future profits as damages has been allowed, where such profits were dependent upon the ability of the plaintiff to successfully negotiate contracts with third persons. Bredemeier v. Pac. Supply Co., 64 Or. 576, 131 P. 312; Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676; Hitchcock v. Supreme Tent of Knights of Maccabees, 100 Mich. 40, 58 N. W. 640, 43 Am. St. Rep. 423; Sparks v. Reliable Dayton Motor Car Co., 85 Kan. 29, 116 P. 363, Ann. Cas. 1912C, 1251; Hichhorn v. Bradley, 117 Iowa, 130, 90 N. W. 592; Huntington v. Jacob Haish Co., 190 Iowa, 1197, 181 N. W. 480; Emerson v. Pac. C. & N. Packing Co., 96 Minn. 1, 104 N. W. 573, 1 L. R. A. (N. S.) 445, 113 Am. St. Rep. 603, 6 Ann. Cas. 973; Holton v. Monarch Motor Car Co., 202 Mich. 271, 168 N. W. 539.

We conclude that the evidence adduced measured up to the rule, and would have sustained a finding by the jury that Calkins suffered an actual loss and damage as a natural and proximate result of the alleged wrongful act of the Woolworth Company. [8, 9] Were the damages uncertain as to their measure or extent? The general rule is that, where the cause and existence of damages have been established with sufficient certainty, recovery will not be denied because they are difficult of ascertainment. Crichfield v. Julia (C. C. A. 2) 147 F. 65, 70, 71; Rule v. McGregor, 117 Iowa, 419, 90 N. W. 811, 812; Taylor v. Bradley, 4 Abb. Dec. (N. Y.) 363, 366; Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 266, 54 Am. Rep. 676; Bredemeier v. Pacific Supply Co., 64 Or. 576, 131 P. 312, 313; Westesen v. Olathe State Bank, 75 Colo. 340, 225 P. 837, 839; Bluegrass Cordage Co. v. Luthy,

98 Ky. 583, 33 S. W. 835, 837; American S. & R. Co. v. Riverside D. & S. Farm (C. C. A. 8) 236 F. 510, 515; Hetzel v. B. & O. R. R. Co., 169 U. S. 26, 37, 18 S. Ct. 255, 42 L. Ed. 648; U. S. Trust Co. v. O'Brien, 143 N. Y. 284, 287, 289, 38 N. E. 266, 267. In such cases, the amount may be fixed by the jury in the exercise of a sound discretion under proper instructions from the court. Pye v. Eagle Lake Lumber Co., 66 Cal. App. 584, 227 P. 193, 195; Manss-Owens Co. v. H. S. Owens & Son, 129 Va. 183, 105 S. E. 543, 549, 550; Prejean v. Delaware-Louisiana Fur Trapping Co. (C. C. A. 5) 13 F.(2d) 71, 72, 73. While these rules have been more generally applied to torts, they also apply to actions for breach of contract, and a party who has broken his contract ordinarily will not be permitted to escape liability because of uncertainty as to the amount of damages resulting therefrom. Occidental Cons. Min. Co. v. Comstock Tunnel Co. (C. C. Nev.) 125 F. 244; Kennett v. Katz Const. Co., 273 Mo. 279, 202 S. W. 558, 562; Hetzel v. B. & O. R. R. Co., supra; U. S. Trust Co. v. O'Brien, supra; 17 C. J. pp. 756, 757, § 90.

[10] In the instant case, the proof showed that the usual and customary commission to a broker for successfully negotiating such a lease would amount to $37,800. It further showed that another broker was able to negotiate a contract with the bank for a commission of $15,000. In our opinion, there was sufficient proof from which the jury, in the exercise of its discretion, might have determined the amount of plaintiff's loss.

We accordingly conclude that the damages in the instant case were not so uncertain as to their amount as to preclude recovery.

We hold, therefore, that the court under proper instructions should have submitted to the jury, first, the question as to whether the proposal and acceptance was made as testified to by Calkins; second, whether or not the parties intended thereby a binding and legal contractual obligation; and, third, in the event the jury should find in favor of Calkins on the first two propositions, the issues with reference to the alleged breach of such contract and the resultant damages.

The cause is reversed and remanded, with instructions to grant Calkins a new trial.